163 N.J. Super. 595 (1978)
395 A.2d 533
MAUDE HARRINGTON ET AL., PLAINTIFFS,
v.
DEPARTMENT OF LABOR AND INDUSTRY ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided November 9, 1978.
*596 Mr. Michael S. Berger, Farmworkers Rights Project Civil Liberties Education and Action Fund of the American Civil Liberties Union of New Jersey.
Mr. Michael Semler, Migrant Legal Action Program, Inc., attorney for plaintiffs.
Mr. John J. Degnan, Attorney General of New Jersey, attorney for defendant (Mr. Michael S. Bokar, Deputy Attorney General, on the brief).
*597 Mr. Jeffrey D. Doranz, Assistant Counsel for Standards, Office of the Solicitor, United States Department of Labor, on the amicus curiae brief.
FRANCIS, A.J.S.C.
Plaintiffs have brought this action on behalf of themselves and other farm laborers similarly situated to compel enforcement of N.J.S.A. 34:9A-37 to 41, the Drinking Water and Toilet Facilities Act (henceforth the field sanitation provisions). Defendant, the New Jersey Department of Labor and Industry, charged with enforcing the act, ceased such enforcement because it claims the act is inseparable from the Seasonal Farm Labor Act, N.J.S.A. 34:9A-1 et seq. The latter act has, in part, been preempted by OSHA (the Occupational Safety and Health Act, 29 U.S.C. § 651 et seq.), and is to that extent inoperative. There is no contention that the field sanitation provisions are preempted. The sole issue is whether or not these provisions are enforceable apart from the Seasonal Farm Labor Act.
Severability of a statute is a matter of legislative intent. Affiliated Distillers Brands Corp. v. Sills, 60 N.J. 342 (1972); State v. Lanza, 27 N.J. 516 (1958). Legislative intent is generally aided by a presumption of severability and "must be determined on the basis of whether the objectionable feature of the statute can be excised without substantial impairment of the principal object of the statute." Affiliated Distillers Brands Corp. v. Sills, supra 60 N.J. at 345.
The presumption is not a strong one and is further weakened by N.J.S.A. 1:1-10, which states:
If any title, subtitle, chapter, article or section of the Revised Statutes or any provision thereof, shall be declared to be unconstitutional, invalid or inoperative in whole or in part, by a court of competent jurisdiction, such title, subtitle, chapter, article, section or provision shall to the extent that it is not unconstitutional, invalid or inoperative [sic], be enforced and effectuated and no such determination shall be deemed to invalidate or make ineffectual the remaining titles, subtitles, chapters, articles, sections or provisions.
*598 The Seasonal Farm Labor Act is constitutional but has been rendered at least partially inoperative by OSHA: indeed the Law Division stated in Five Migrant Farmworkers v. Hoffman, 136 N.J. Super. 242 (Law Div. 1975), that "there are left no requirements of the Seasonal Farm Labor Act as to which there must be compliance" (at 248).[1]
Secondly, the presumption is not mandatory but is rather an interpretive tool to be used by the courts in determining the legislative intent. See State v. Lanza, 27 N.J. 516 (1958). That case explains:
* * * even if there is no such express declaration of separability, an unconstitutional provision in a statute does not affect the validity of a separate article or clause of the enactment, if otherwise valid, unless the two are so intimately connected and mutually dependent as reasonably to sustain the hypothesis that the Legislature would not have adopted the one without the other. * * * the question is to be considered in the light of the settled principle that a permissible doubt as to validity is to be resolved in favor of the enactment [at 528].
The statute before the court has no separability provision, but this does not permit us to conclude that the Drinking Water and Field Toilet Act is inoperative along with the Seasonal Farm Labor Act. In fact, we conclude quite otherwise. Fundamentally we consider the acts to be separate and distinct parts of an overall statutory scheme whose object is the improvement and oversight of migrant labor conditions. State v. Shack, 58 N.J. 297 (1971), recognized that migrant farmworkers are "a highly disadvantaged segment of our society". They are "a community within but apart from the local scene. They are rootless and isolated. Although the need for their labors is evident, they are unorganized and without economic or political power. It is *599 their plight alone that summoned government to their aid" (at 303).
Chapter 9A of the New Jersey Labor and Workmen's Compensation Act represents New Jersey's response to the migrant farmworkers' problem as part of the overall regulation of labor within the state. There are two sections in this chapter. One is the Seasonal Farm Labor Act, N.J.S.A. 34:9A-1 to 36, which is entitled in the annotation to the first section, "An act relating to labor camps, supplementing Title 34 of the Revised Statutes, and establishing a bureau of migrant labor in the Department of Labor and Industry, defining the functions, powers and duties of the bureau and abolishing the migrant labor board and vesting its functions, powers and duties in the Commissioner of Labor and Industry." The second is entitled Drinking Water and Toilet Facilities, and its title is described in the annotation to N.J.S.A. 34:9A-37 as an "Act to require the furnishing of drinking water and toilet facilities to seasonal farm workers while working in the fields, and providing penalties for violations."
It seems clear from these quite separate titles that the Legislature passed two separate acts regarding migrant labor. Further suggestions that this was indeed their intention lie in the provision of separate penalty sections (N.J.S.A. 34:9A-17 and 34 in the Seasonal Farm Labor Act; N.J.S.A. 34:9A-40 and 41 in the Drinking Water and Toilet Facilities Act), and in the fact that immediately after the field sanitation act was passed the legislature passed N.J.S.A. 34:9A-7.1 to 7.4, and entitled those sections "A Supplement to the `Seasonal Farm Labor Act.'" Immediately before those two acts the Legislature passed a crew leader act as Chapter 8A of Title 34 (N.J.S.A. 34:8A-7 to 17). This act clearly shows a legislative intent to protect the seasonal farm worker and goes so far as to state explicitly that an employee affected by the act may not waive his rights thereunder (N.J.S.A. 34:8A-16). It might reasonably be implied, therefore, and we conclude, that at the time the field *600 sanitation provisions were passed the Legislature was concerned with the conditions under which migrant farm laborers live and work and passed several acts addressing the problem. The Drinking Water and Toilet Facilities Act was one of these, separate and apart from the other two mentioned.
Whether or not a Legislature has called the statutory provisions in question a supplement to a prior act is, of course, not conclusive on the court. Two guys from Harrison, Inc. v. Furman, 32 N.J. 199 (1960). However, even if we view the field sanitation provisions as a supplement to the seasonal Farm Labor Act, we conclude that the Legislature intended them to be separable. The acts are totally independent of each other in their subject matter. Their only connection is that they are part of the same statutory scheme. They each contain their own definition of "seasonal worker," N.J.S.A. 34:9A-2 and 9A-37. The provisions dealing with Spanish language interpreters, which also define "seasonal worker" (N.J.S.A. 34:9A-7.1), are a clear supplement to the Seasonal Farm Labor Act, and defendant admits that these provisions are separable and have not been rendered inoperative by the preemption of the camp inspection provisions.
Defendant does not suggest any reason for separating out the interpretation sections but not the field sanitation sections of the act, and none appears on examination. Clearly, both portions are excisable in fact. There is no suggestion that enforcement of them will conflict or interfere with federal enforcement of the preempted sections. The situation here is not one where the Federal Government has regulated so broad a field of activity that state regulation in the same field would be impermissible interference. Nor is it one where the Legislature could not have wished the remaining portion of a statute to remain in effect, either because it is disproportionately minor in comparison with the unenforceable part or because its meaning changes when it stands alone. Here the Seasonal Farm Labor Act *601 has not been invalidated. The statutory scheme is still to be carried out. The enforcing arm is now federal rather than state, but OSHA itself indicates a readiness to accept and approve state regulation in the area. 29 U.S.C.A. § 667 (a) and (b). It is reasonable to conclude that the salutary purposes conceived by the Legislature in the enactment of the entire legislative scheme which included, among other matters, the Seasonal Farm Labor Act and the field sanitation provisions, all for the desirable protection of the class intended, remain the valid concern of the Legislature in their entirety. The circumstance that the Federal Government entered the scene and by preemption shouldered a portion of this legislative concern should not connote an intent to abandon that which the OSHA legislation did not undertake. This is not a case where a portion of a statute was invalidated for constitutional or other reasons. Here the purposes and the means enacted to pursue these purposes are valid. There is simply a substitution of the participating governmental entity. Furthermore the Drinking Water and Toilet Facilities Act regulates a discrete and sizeable area of activity and stands unchanged in meaning whether or not the Seasonal Farm Labor Act is enforceable.
The fact that no money has been appropriated to enforce the field sanitation provisions is of little importance. There is no evidence that the Legislature chose to deny enforcement. Rather, defendant chose not to seek appropriations, mistakenly believing that the section was no longer operative.
There is therefore no reason why the act in question should not be enforced. The officer charged with its administration is the Commissioner of the Department of Labor and Industry, and a mandamus lies against him to require the performance of his duty.
NOTES
[1] Five Migrants addressed itself to the preoccupancy inspection of migrant camps, which is at the heart of the Seasonal Farm Labor Act. The court was therefore not considering the enforceability of field sanitation provisions.