**FROHLICK CRANE SERVICE, INC., Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION,**

**and**

**Peter J. Brennan, Secretary of Labor, Respondents.**

**No. 74–1489.**

United States Court of Appeals, Tenth Circuit.

Argued April 30, 1975.

Decided Aug. 19, 1975.

William W. Webster, Denver, Colo. (Gelt & Webster, Denver, Colo., on the brief), for petitioner.

Barbara L. Herwig, Atty., Dept. of Justice (Carla A. Hills, Asst. Atty. Gen., and Stephen F. Eilperin, Atty., Dept. of Justice; and of counsel: William J. Kilberg, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Michael H. Levin, Counsel for App. Litigation, Allen H. Feldman, Acting Asst. Counsel for App. Litigation, and Judith A. Burghardt, Atty., Labor Dept., on the brief), for respondents.

Before SETH, HOLLOWAY and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

This proceeding arises under the Occupational Safety and Health Act of 1970. 29 U.S.C. § 651 *et seq.* Frohlick Crane Service, Inc., the petitioner in this court, seeks review of a decision and order of the Review Commission in which Frohlick was adjudged guilty of a serious violation of 29 C.F.R. § 1926.550(a)(15)(i) and assessed a $500 fine. Frohlick does not deny that there was in fact a violation of the safety standard here involved, and its sole contention is that it was not an "employer" within the meaning of the Act. A review of the facts will place the matter in context.

Frohlick is engaged in the business of leasing heavy cranes, and in connection therewith Frohlick supplies one of its own employees to operate the leased

crane. Under a written one-day lease agreement, Frohlick leased a 15-ton hydrocrane, with operator, to U. S. Elevator Company, a subcontractor who was at the time engaged in installing hydraulic shafts in an apartment complex then under construction. A clause in the lease provided that the leased equipment, and the person operating the leased equipment, "are under Lessee's exclusive jurisdiction, supervision, and control."

The operator of the crane leased by Frohlick to the Elevator Company was one Wesley Lindsey, who had been in the employ of Frohlick for some two months. At the jobsite, an employee of the Elevator Company outlined the work to be performed, i. e., the placing of the hydraulic shafts, but left it to Lindsey, the crane operator, to determine the manner in which the work was to be performed. In other words, only Lindsey knew *how* to operate the crane, and though the Elevator Company indicated the work to be done, no employee of the Elevator Company exercised any control over Lindsey in the mechanical operation of the crane.

On the day in question, Lindsey had completed the actual placing of the hydraulic shafts and he was in the process of removing the crane from the jobsite when the crane boom came in contact with an uninsulated overhead power line carrying 7,620 volts. This resulted in the immediate electrocution of a laborer standing near the crane. Lindsey escaped unharmed, although he was himself in danger when the boom touched the overhead line.

Based on this sequence of events Frohlick was given two citations for violation of the Act. The first citation, which is not involved here, was for several nonserious violations of the Act arising out of Frohlick's maintenance of its shops and yards. In the second citation Frohlick was cited for a serious violation for failing to keep a minimum clearance between the crane and the power line. In connection with this latter citation Frohlick was served with a proposed penalty of $500 and ordered to abate the violation immediately. After a hearing the Administrative Judge affirmed the citation and penalty, which decision was subsequently upheld by the Review Commission. Frohlick now seeks review of such order.

The declared purpose of the Act is to assure so far as possible safe and healthful working conditions for every working man and woman in the Nation. *Lee Way Motor Freight, Inc. v. Secretary of Labor,* 511 F.2d 864 (10th Cir. 1975), and *Brennan v. Occupational Safety & Health Review Commission,* 505 F.2d 869 (10th Cir. 1974). The duty to insure such safe and healthful working conditions is cast primarily on the employer. Specifically, 29 U.S.C. § 654 provides as follows:

"(a) Each employer—

(1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;

(2) shall comply with occupational safety and health standards promulgated under this chapter."

The particular standard with which we are here concerned is 29 C.F.R. 1926.-550(a)(15)(i), which reads as follows:

"For [power] lines rated 50 kV. or below, minimum clearance between the lines and any part of the crane or load shall be 10 feet."

As indicated, Frohlick concedes that there was a violation of the aforesaid standard requiring a minimum clearance of 10 feet between a crane and a power line rated 50 kV. or below. Its sole position in the present proceeding is that its employee, Lindsey, the crane operator, had been "loaned" to the Elevator Company and that accordingly the Elevator Company, and not Frohlick, was the "employer" against whom the citation should have issued. In thus arguing Frohlick relies on what it describes as the common law doctrine of "borrowed employee." In this connection it asserts that the "borrowing employer" is the one who under the Act has the responsibility of providing a safe place for employees

to work and, in the instant case, of making certain that there be compliance with the standard governing the amount of clearance between the crane and the power line. We do not agree with this contention.

■ Although the Act in its definitions sections defines the term "employer," 29 U.S.C. § 652(5), such definition is of no particular help in resolving the present controversy. Frohlick suggests that 29 U.S.C. § 653(b)(4) has applicability. We do not agree. That section provides that nothing in the Act shall be construed to supersede or in any manner affect rights accruing under workmen's compensation laws, or to affect common law or statutory rights, duties or liabilities of either the employer or employee "with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment." It would appear that by this particular provision Congress simply intended to preserve the existing private rights of an injured employee, which rights were to be unaffected by the various sections of the Act itself. *Jeter v. St. Regis Paper Co.,* 507 F.2d 973 (5th Cir. 1975).

Although in an admittedly different context, the Secretary of Labor in carrying out the mandate of the Act has declared that the existence of an employment relationship should be based "upon economic realities rather than upon common law doctrines and concepts." 29 C.F.R. § 1977.5(a). To the same effect, *Brennan v. Gilles & Cotting, Inc.,* 504 F.2d 1255 (4th Cir. 1974), held that the common law definition of "employer" is inapplicable in determining whether there has been a violation of the Act, and that a definition of "employer" under the Act is to be determined by reference to the purposes of the Act. *See also REA Express, Inc. v. Brennan,* 495 F.2d 822 (2d Cir. 1974).

■ The issue to be resolved is whether Frohlick was an "employer" of Lindsey within the meaning of the Act when the standard relating to the minimum clearance between the crane and the power line was admittedly violated. In this regard the Judge concluded that Frohlick was the employer, with the comment that where, as here, the lessee of the crane relies upon the expertise of the crane operator and gives no particular direction as to the operation of the crane, then it is the duty of Frohlick, the actual employer of the crane operator, to comply with the minimum safety requirements as set forth in the standards. The Commission agreed with this conclusion and the rationale in support thereof, and so do we.

■ There is a suggestion that the language in the lease to the effect that the crane and its operator were under the exclusive control of the lessee, the Elevator Company, is dispositive of the present controversy. We disagree. Any private agreement of this sort between the parties cannot control the statute. So, notwithstanding the lease provision, the question is still whether the Commission's finding that Frohlick was Lindsey's employer is supported by the record. We conclude that this finding is supported by substantial evidence and that in so finding the Commission did not labor under any misapprehension as to the law. In such circumstance, we should affirm. *Brennan v. Occupational Safety & Health Review Com'n,* 501 F.2d 1196 (7th Cir. 1974).

We do not believe it necessary to get involved in any discussion as to the law of "borrowed employees." That is a term which frequently appears in cases where tort liability arising out of an industrial accident is at issue. Hence, such cases as *McCollum v. Smith,* 339 F.2d 348 (9th Cir. 1965), and *Truitt v. B & G Crane Service, Inc.,* 165 So.2d 874 (La. 1964), relied on here by Frohlick, are inapposite.

This is not a tort case. Rather, it is an administrative proceeding brought under remedial legislation designed to provide a safe place to work for every working man and woman in the Nation. The Act should not be given a narrow or technical construction, and on the facts before it the Commission did not err in determining that Frohlick was Lindsey's

employer when the standard was violated.

■ In sum, then, Lindsey, and no one from the Elevator Company, was responsible for the operation of the crane. True, Elevator Company employees indicated the work to be done, but Lindsey determined how to perform the task assigned. At the time the safety standard here involved was violated the hydraulic shafts had been installed and Lindsey was in the process of leaving the jobsite. It was in this factual setting that there was an admitted violation of the safety standard relating to the minimum clearance between the crane and the power line. Certainly the Elevator Company had no control of any sort over Lindsey at this particular time. We agree with the Review Commission that under such circumstances it was the duty of Frohlick, and not the Elevator Company, to make certain that there was compliance with the minimum safety requirements as contained in the standard.

Order affirmed.