136 N.J. Super. 242 (1975)
345 A.2d 378
FIVE MIGRANT FARMWORKERS, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS,
v.
JOSEPH HOFFMAN, IN HIS CAPACITY AS COMMISSIONER OF THE DEPARTMENT OF LABOR & INDUSTRY; THE DEPARTMENT OF LABOR & INDUSTRY; MARIO GOMES, IN HIS CAPACITY AS CHIEF OF THE BUREAU OF MIGRANT LABOR; BUREAU OF MIGRANT LABOR, AND SAMUEL STERN & SONS, INC., A NEW JERSEY CORPORATION; DEFENDANTS.
Superior Court of New Jersey, Law Division.
August 26, 1975.
*243 Mr. Michael S. Berger, for plaintiffs (Camden Regional Legal Services, Inc., attorney).
Ms. Miriam Daniel Guido for plaintiffs, pro hac vice.
Mr. Michael S. Bokar, Deputy Attorney General, for defendants Hoffman and Gomes (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
Mr. Jeffrey Doranz for United States Department of Labor as amicus curiae.
HORN, A.J.S.C.
Defendants Hoffman and Gomes, in their respective governmental capacities, move for a dismissal of this in lieu action or for summary judgment. The corporate defendant, Samuel Stern & Sons, Inc., has been dropped from the case by consent of plaintiffs.
The action, brought and permitted to proceed as a class action for "Five Migrant Farmworkers and all others similarly situated," alleges essentially that there are approximately 1,000 migrant farm labor camps in New Jersey which are used to house nearly 11,000 workers who come to this State for agricultural work. Before 1975 the program *244 of enforcement for minimum standards of housing and sanitation have included pre-occupancy inspections as well as periodic inspections of all migrant labor camps in New Jersey.
Commencing in 1975 the State will no longer make preoccupancy inspections of labor camps except as to those which recruit workers through the Division of Employment Services which result from the requirements of the Wagner-Peyser Act of 1933. 29 U.S.C.A. § 49 et seq. As a result, no such pre-occupancy inspections will be performed in 600 to 700 migrant labor camps in New Jersey.
It is further asserted that plaintiffs and the others similarly situate suffer and will in the future suffer from the failure to make such inspections as mandated by the provisions of the Seasonal Farm Labor Act, N.J.S.A. 34:9A-1 et seq., and particularly 34:9A-20, which is partially quoted hereinafter.
Although they do not dispute the material allegations of fact, defendants and amicus curiae disagree with plaintiffs' thesis with respect to the present obligation on the part of the State to make pre-occupancy inspections. The basis for the disagreement rests on the issue of pre-emption by the Federal Government of the obligation, right and duty for such pre-occupancy inspections, i.e., are the terms of N.J.S.A. 34:9A-20 superseded and rendered nugatory by the provisions of the Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C.A. § 651 et seq.?
The problem did not arise until April 1, 1975 because, pursuant to OSHA, the U.S. Secretary of Labor (Secretary) had approved a plan submitted by New Jersey, 29 U.S.C.A. § 672(g), in 1972, whereby the Federal Government provided 50% of the funds for administration and enforcement of the New Jersey program, including pre-occupancy as well as post-occupancy inspections of camps. Upon the failure of the State Legislature to enact required legislation to continue the plan in force, both the Secretary *245 and defendant Hoffman, as the Commissioner of Labor and Industry, mutually agreed that the plan must become ineffective, leaving the parties to carry out only the obligations imposed otherwise. Consequently, the Commissioner withdrew regulations pertaining to pre-occupancy inspections.
Plaintiffs submit that N.J.S.A. 34:9A-20 still requires the State to make such pre-occupancy inspections. This statute partially reads as follows:
Each person employing any person to work in or at camps * * * shall apply, not later than 60 days prior to the opening of any such camp * * * to the bureau (of migrant labor) for a certificate of compliance of such camp with the requirements of this act. * * * The commissioner (of Labor and Industry) shall cause each camp to be inspected within 45 days of receipt of an application * * *. If the commissioner finds from the application and inspection that a camp fully complies with the requirements of this act, he shall issue a certificate to that effect. No camp shall be maintained, operated, used or occupied until the commissioner shall have issued therefor a certificate as required by this section; provided, that if no inspection of a camp has been made within 45 days of the receipt of an application for a certificate of compliance, such camp may open but shall be closed by the commissioner if subsequent inspection discloses the fact that such camp does not substantially comply with the requirements of this act. [Emphasis supplied]
It is conceded by plaintiffs that at least part of the laws of New Jersey pertaining to inspections of farm labor camps have been superseded as the result of pre-emption under OSHA. Specifically, post-occupancy inspections are no longer to be made by the State under N.J.S.A. 34:9A-10, which mandates post-occupancy inspections.
The pre-emption stems from section 18(a) of OSHA, which specifically provides:
Nothing in this Act shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect under section 655. [29 U.S.C.A. 667(a); emphasis supplied]
The Secretary, pursuant to the statute, has promulgated a broad set of standards substantially similar to those proclaimed *246 by the New Jersey Department of Labor and Industry. The effect of the adoption of these standards, as already mentioned, admittedly is to relieve the State from performing such post-occupancy inspections.
Plaintiffs advance several grounds for their contentions that the State is still required to conduct pre-occupancy inspections pursuant to N.J.S.A. 34:9A-20. They urge that there is no explicit or implicit pre-emption of New Jersey certification of farm labor housing and that there is no federal standard in effect to regulate and certify farm labor housing prior to occupancy. They observe that the Wagner-Peyser Act, 29 U.S.C.A. § 49 et seq., which provides for the interstate recruitment of farm workers through the state employment services, makes it mandatory by reason of the Federal Code of Regulations, 20 C.F.R. 620, that pre-occupancy inspections be made by the state employment service and that the housing must be certified to be in compliance with the regulations before workers so recruited may be employed. It is said that N.J.S.A. 34:9A-20 provides for a system of certification similar to that of the Wagner-Peyser Act. This alone, they argue, would indicate that pre-emption was not intended.
I disagree because I find that the federal statute, OSHA, is so broad and sweeping as to encompass the entire gamut of migrant worker protection in the field of inspection and minimum standards of migrant workers' housing quarters.
There is no doubt in my mind that the Secretary may conduct pre-occupancy as well as post-occupancy inspections, but whichever inspection is made the same standards must be observed. The mere fact that the Secretary may not conduct inspections at all or not as often as plaintiffs feel to be necessary is not legal cause for construing statutes differently. Perhaps a failure may lead to another type of cause of action, but it does not affect the basic principles determining pre-emption.
*247 The fact that the Wagner-Peyser Act compels pre-occupancy inspections with respect to camps to be occupied by workers recruited through the interstate system does not create any precedent or even an implication that there must be similar inspections under state law to cover housing for those recruited outside the system because it raises no implication that similar inspections would not otherwise be made by the Secretary.
Even agreeing that there should be no distinctions with respect to housing or inspections thereof on the basis of how the farm workers are obtained, it still does not follow that same raises an implication that different housing standards are applicable or that pre-emption has not taken place.
Because in some instances the standards created by the New Jersey Department of Labor and Industry may be more stringent adds no weight to plaintiffs' arguments. It remains that the Secretary did promulgate standards sufficient under his jurisdiction and authority to carry out the congressional intent. The question of pre-emption cannot, in my opinion, turn upon a comparison of the respective regulations.
Pre-emption is a factual determination essentially based upon intention of the predominant authority, in this instance the federal law. Summer v. Teaneck, 53 N.J. 548 (1969); Wein v. Irvington, 126 N.J. Super. 410 (App. Div. 1974); Hanover Tp. v. Morristown, 135 N.J. Super. 529 (App. Div. 1975).
OSHA establishes a comprehensive legislative scheme whose declared purpose is "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C.A. § 651. This act demonstrates an intention to supersede the authority and obligations of all state laws with respect to the general working conditions where such standards as were adopted by the Secretary are inaugurated. Burbank v. Lockheed Air Terminal, *248 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973). The preemption covers pre- as well as post-occupancy inspections. As stated in Burbank, each case turns on the peculiarities and special features of the federal regulatory scheme in question.
N.J.S.A. 34:9A-20 requires pre-occupancy inspections to determine compliance "with the requirements of this act." Since the requirements for adequate and proper housing after occupancy admittedly are now solely within the sphere of the Secretary and no longer with the State, it seems to me that since the federal regulations now control there are left no requirements of the Seasonal Farm Labor Act as to which there must be compliance.
Apart from all other considerations, N.J.S.A. 34:9A-20, when read with N.J.S.A. 34:9A-16, creates doubt as to whether there is a mandatory obligation to make pre-occupancy inspections. Section 16 authorizes the Department of Labor and Industry to temporarily suspend the operation of one or more sections of the Seasonal Farm Labor Act when material priorities or manpower shortages make it impractical to comply therewith. As already observed, section 20 does not make it a condition precedent that an inspection be made before a camp is opened. In my view, I am not obliged to decide whether the State would otherwise be obliged to perform pre-occupancy inspections as a mandatory obligation.
Having determined that the Secretary has the authority under OSHA to make pre-occupancy inspections as well as post-occupancy inspections, the fears of plaintiffs that he would be less vigilant than the State is not an acceptable basis for determining the question of pre-exemption.
I have considered all other arguments of plaintiffs and find them to be without merit. Accordingly, except where out-of-state workers are recruited through the interstate clearance system under the Wagner-Peyser Act (29 U.S.C.A. § 49 et seq.), I hold that the State has neither the *249 authority nor the obligation to make pre-occupancy inspections of farm labor camps under the Seasonal Farm Labor Act (N.J.S.A. 34:9A-1 et seq.).
Finding that plaintiffs' complaint fails to state a cause of action, judgment dismissing same will be entered.