THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
CHICAGO MAGNET WIRE CORPORATION *et al.*, Defendants-Appellees.
First District (1st Division)   No. 86—0114

Opinion filed June 29, 1987.

Richard M. Daley, State's Attorney, of Chicago (Glenn E. Carr, Glenn C.
Sechen, Frank J. Parkerson, and Lynn Worley, Assistant State's Attorneys,

of counsel), for the People.

George J. Cotsirilos and Robert M. Stephenson, both of Cotsirilos & Crowley, of Chicago (Rex E. Lee, of counsel), for appellee Chicago Magnet Wire Corporation.

Patrick A. Tuite, of Patrick A. Tuite, Ltd., of Chicago (Rex E. Lee, of counsel), for appellee Kevin Keane.

Harvey M. Silets, of Silets & Martin, Ltd., of Chicago (Rex E. Lee, of counsel), for appellee Anthony Jordan.

William J. Martin, of William J. Martin, Ltd., of Oak Park (Rex E. Lee, of counsel), for other appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County dismissing various indictments and informations against Chicago Magnet Wire Corporation (CMW), and five corporate officials, Anthony Jordan, Kevin Keane, Gerald Colby, Allan Simon, and Frank Asta. The sole issue on appeal is whether State criminal prosecutions based on conditions in the workplace are preempted by the Occupational Safety and Health Act of 1970 (OSHA) (29 U.S.C. sec. 651 *et seq.* (1982)). We affirm.

On June 26, 1985, the grand jury of Cook County voted indictments against CMW and five of its corporate officials, charging each with multiple counts of aggravated battery and reckless conduct pursuant to sections 12—4(a), 12—4(c) and 12—5 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, pars. 12—4(a), (c), 12—5) and with violating the conspiracy statute (Ill. Rev. Stat. 1985, ch. 38, par. 8—2(a)).

One set of aggravated battery indictments, charging a violation of section 12—4(a) (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(a)), alleged that CMW and the individual defendants, while acting in their official capacity, exposed the named employees to numerous federally regulated substances in the workplace; failed to provide necessary safety instructions and equipment and health monitoring systems in the workplace; provided inadequate ventilation in the workplace and maintained dangerously overheated working conditions while the employees were exposed to the federally regulated substances. It was alleged that as a consequent of these acts, defendants violated their duty to provide a safe workplace for employees and caused great

bodily harm to the named employees with the conscious awareness that a substantial probability existed that their acts would cause great bodily harm.

The second set of aggravated battery indictments alleged that CMW and the individual defendants knowingly committed acts which would cause named employees to take by deception and for other than medical purposes federally regulated substances and that such acts harmed the employees in violation of section 12—4(c) (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(c)).

The reckless conduct charges alleged that defendants, in conducting the business of coating wire, grossly deviated from the standard of care which a reasonable employer would exercise in the same situation and thereby violated their duty to provide a safe workplace in violation of section 12—5 (Ill. Rev. Stat. 1985, ch. 38, par. 12—5).

The conspiracy indictment charged both CMW and the individual defendants with conspiring against the named employees with the intent to commit aggravated battery in violation of section 8—2(a) (Ill. Rev. Stat. 1985, ch. 38, par. 8—2(a)).

Defendants filed a joint motion to dismiss and on December 13, 1985, the court dismissed all charges against them, finding that OSHA preempted Illinois from applying Illinois criminal law to conduct involving federally regulated occupational safety and health issues within the workplace. The State filed various informations which were dismissed on the same basis and this appeal followed.

The State contends that the indictments should be reinstated as the prosecutions were undertaken in pursuance of the State's police power, which was neither expressly nor impliedly preempted by Congress. The defendants contend that the criminal charges are expressly preempted by OSHA and that the dismissal of the charges should be affirmed.

State laws are preempted when Congress has declared its intent, either explicitly or implicitly, to occupy a certain area of law. (*Silkwood v. Kerr-McGee Corp.* (1984), 464 U.S. 238, 248, 78 L. Ed. 2d 443, 452, 104 S. Ct. 615, 621; *Jones v. Rath Packing Co.* (1977), 430 U.S. 519, 525, 51 L. Ed. 2d 604, 614, 97 S. Ct. 1305, 1309.) Where preemptive intent is not expressly stated in the statute, the intent of Congress must be derived from the statutory language, from the comprehensiveness of the regulatory scheme, from the legislative history of the statute, or from the fact that the Federal and State statutes at issue conflict. (See *Hillsborough County, Florida v. Automated Medical Laboratories, Inc.* (1985), 471 U.S. 707, 85 L. Ed. 2d 714, 105 S. Ct. 2371.) In our view, the comprehensiveness of the Oc-

cupational Safety and Health Act, in conjunction with the fact that the States have been afforded the opportunity to develop their own regulatory schemes, evidences a congressional intent to preempt the State from applying its criminal statutes to conditions in the workplace that are specifically regulated by OSHA.

Congress enacted OSHA in 1970 "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." (29 U.S.C. sec. 651(b) (1982).) Section 655 of the Act expressly provides for the adoption of Federal standards of industrial safety, and while the Federal standards are given primacy under the statute, the States are permitted to exercise independent State action under certain circumstances.

A State agency may assert jurisdiction over an occupational safety or health issue if there is no Federal standard in effect (29 U.S.C. sec. 667(a) (1982)), or a State may submit its own enforcement plan to the United States Secretary of Labor for approval pursuant to 29 U.S.C. sec. 667(b) (1982). In the absence of a State plan which has been approved by the Secretary of Labor, State laws related to working conditions regulated by OSHA are preempted.

The preemptive effect of section 667(b) was recognized by the Illinois Supreme Court in *Stanislawski v. Industrial Com.* (1983), 99 Ill. 2d 36, 39-40, 457 N.E.2d 399, in which the court stated that under OSHA, "the only method by which a State may assume responsibility for development and enforcement of safety and health standards with respect to which Federal standards have been adopted" is through an approved State plan under the Act. (See also *United Air Lines, Inc. v. Occupational Safety & Health Appeals Board* (1982), 32 Cal. 3d 762, 772, 654 P.2d 157, 163, 187 Cal. Rptr. 387, 393 (a State is preempted from regulating matters governed by OSHA standards in the absence of the adoption of a federally approved State plan); *Five Migrant Farmworkers v. Hoffman* (1975), 136 N.J. Super. 242, 247, 345 A.2d 378, 381 (OSHA supersedes all State laws with respect to general working conditions).)

Illinois submitted a State plan, but it was withdrawn on June 30, 1975. (See *Stanislawski v. Industrial Com.* (1983), 99 Ill. 2d 36, 39, 457 N.E.2d 399.) The State's position, however, is that it was under no obligation to comply with section 667(b) by developing a State plan in order to prosecute defendants under State criminal laws. The State argues that the preemptive effect of sections 667(a) and (b) is limited to State administrative schemes, such as the one at issue in *Stanislawski*, which duplicate OSHA's regulation of health and safety standards, but that it was not intended to extend to State criminal

laws as they might apply in the workplace.

■ The main thrust of the State's argument is that the prosecutions at issue here are not preempted because they are based on the application of general criminal laws rather than on the enforcement of specific workplace health and safety regulations. To support its assertion that Congress explicitly intended to leave preexisting State criminal laws undisturbed, the State cites section 653(b)(4) of the Act, which provides:

> "Nothing in this chapter shall be construed to supersede or in any manner affect any workman's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment." 29 U.S.C. sec. 653(b)(4) (1982).

In our view, this section of the Act does not permit the State to prosecute conduct or conditions in the workplace under State criminal laws insofar as the conduct or conditions are regulated by OSHA. The courts which have interpreted section 653(b)(4) have consistently found that the purpose of this section was to preserve the existing private rights of injured employees relative to workman's compensation, State tort law, and other common law remedies against employers but not to create any additional civil remedies in favor of employees. See, *e.g., Johnson v. Koppers Co.* (N.D. Ohio 1981), 524 F. Supp. 1182, 1189, *appeal dismissed* (6th Cir. 1982), 705 F.2d 454; *United Steelworkers of America, AFL-CIO v. Marshall* (D.C. Cir. 1980), 647 F.2d 1189, 1235-36, *cert. denied* (1981), 453 U.S. 913, 69 L. Ed. 2d 997, 101 S. Ct. 3148; *Berardi v. Getty Refining & Marketing Co.* (1980), 107 Misc. 2d 451, 435 N.Y.S.2d 212, 215-16.

■ The determinative factor is not whether the State is seeking to enforce a criminal law of general application rather than specific workplace health and safety regulations but what conduct the State is seeking to regulate. (See *NDK Corp. v. Local 1550 of the United Food & Commercial Workers International Union* (1984), 128 Ill. App. 3d 207, 470 N.E.2d 565.) The State would not be foreclosed from applying its criminal laws in the workplace if the prosecutions charged the defendants with crimes not involving working conditions. The conduct the State seeks to regulate here, however, as evidenced by the language of the indictments, is conduct related to working conditions now regulated by OSHA. We therefore believe that the trial court properly found that the prosecutions were preempted.

The State's reliance on *Silkwood v. Kerr-McGee Corp.* (1984), 464

U.S. 238, 78 L. Ed. 2d 443, 104 S. Ct. 615, is misplaced. In *Silkwood*, the Supreme Court reversed a Court of Appeals decision which held that the Atomic Energy Act, and the Nuclear Regulatory Commission established by it, preempted State law and precluded an award of punitive damages for injuries caused by exposure to radiation. The Supreme Court held that the award of punitive damages under State tort law was not preempted in that allowing a plaintiff to recover for injuries caused by nuclear hazards was not inconsistent with the Federal regulatory scheme developed by the Nuclear Regulatory Commission. *Silkwood v. Kerr-McGee Corp.* (1984), 464 U.S. 239, 257-58, 78 L. Ed. 2d 443, 452, 104 S. Ct. 615, 621.

*Silkwood* was decided under the Atomic Energy Act, to which OSHA does not apply. In addition, the court in *Silkwood* distinguished between "state regulation of the safety aspects of nuclear energy," which was held preempted, and State law to compensate injured persons, which the court held was not preempted. Here, although the State characterizes its purpose as punitive and deterrent and therefore permissible under *Silkwood*, in fact it seeks to regulate occupational safety and health through the application of criminal laws, which is impermissible under section 18(b) of OSHA. 29 U.S.C. sec. 667(b) (1982).

The State has expressed valid and legitimate concerns about the consequences of preemption on its ability to control the activities of employers. But Congress has evidenced an intent that criminal sanctions should not be imposed for activities involving workplace health and safety except in highly limited circumstances, and that health and safety requirements should be established through standard-setting, which provides employers with clear and detailed notice of their legal obligations. Illinois' view that employers may be held criminally liable for workplace injuries or illness, regardless of their compliance with OSHA standards, would lead to piecemeal and inconsistent prosecutions of regulatory violations throughout the States, a result that Congress sought to preclude in enacting OSHA.

For the foregoing reasons, we affirm the decision of the circuit court of Cook County dismissing the indictments against Chicago Magnet Wire and its corporate officers.

Judgment affirmed.

CAMPBELL and BUCKLEY, JJ., concur.