## STATE of Wisconsin EX REL. Larry Norman CORNELLIER, Sr., Petitioner,

### v.

## Joseph J. BLACK, Sheriff of Rock County, Wisconsin, Respondent.†

### Court of Appeals

*No. 87–1120–W. Submitted on briefs March 23, 1988.—Decided April 21, 1988.*

(Also reported in 425 N.W.2d 21.)

† Petition to review pending. This petition was not disposed of at the time the volume went to press. Its disposition will be reported in a later volume.

746

748

For the petitioner the cause was submitted on the briefs of *John O. Olson* and *Braden, Olson & Olm,* of Lake Geneva.

For the respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, *Daniel J. O'Brien,* assistant attorney general, and *Thomas J. Balistreri,* assistant attorney general.

Before Gartzke, P.J., Eich and Sundby, JJ.

EICH, J.   This is an original petition for a writ of habeas corpus. The petitioner, Larry Cornellier, was arrested and charged with homicide by reckless conduct in violation of sec. 940.06, Stats., after an employee in a fireworks plant owned by a corporation of which he was an officer was killed in an explosion and fire. When the trial court denied his motion to dismiss the complaint, he petitioned this court for a writ of habeas corpus. The supreme court denied certification.

The issues are: (1) whether habeas corpus is an appropriate means of testing the sufficiency of a criminal complaint; (2) whether the federal Occupational Safety and Health Act (OSHA), which provides penalties for the general conduct giving rise to the charge, preempts state action in this case; and (3) if habeas corpus lies and OSHA is not preemptive, whether the complaint states probable cause. We conclude that habeas corpus does lie, that OSHA does not bar the prosecution, and that the complaint is sufficient to state probable cause. We therefore deny the writ.

The facts are not in dispute. Cornellier is an officer and director of Pyro Science Development Corporation, a fireworks manufacturer. On March 23, 1983, an employee at Pyro's Milton plant plugged a

fan into an electrical outlet, generating sparks which caused a fire and explosion that killed another plant employee, Dennis Whitt, and injured several other people. After an investigation, Rock County authorities issued a criminal complaint charging Cornellier, who was alleged to be the day-to-day director of operations at the plant, with homicide by reckless conduct. The complaint, which will be discussed in detail later in this opinion, generally based the charge on Cornellier's knowledge of substantial fire and explosion hazards at the plant, many of them in violation of OSHA requirements, and his failure to take any steps to correct them.

As indicated, Cornellier moved to dismiss the complaint for failure to state probable cause, and the trial court denied the motion. He then petitioned this court for a writ seeking the same relief. Because of our doubts as to the vitality of earlier precedents holding that habeas corpus will lie to test the sufficiency of a criminal complaint—doubts we discussed at length in *State ex rel. McCaffrey v. Shanks,* 124 Wis. 2d 216, 369 N.W.2d 743 (Ct. App. 1985)—we certified the case to the supreme court. Certification was denied without comment, and the case was remanded to us. We asked for additional briefing on the effect of OSHA on the prosecution. Other facts will be discussed below.

## I. HABEAS CORPUS

■ The supreme court has repeatedly held that habeas corpus will lie to test the sufficiency of a criminal complaint, despite unresolved conflicting precedent on the issue. *McCaffrey,* 124 Wis. 2d at 220–21, 369 N.W.2d at 746–47. While the state argues

persuasively against use of the writ for interlocutory review of a trial court's denial of a motion to dismiss a criminal complaint, we are bound by supreme court precedent. *State v. Lossman,* 118 Wis. 2d 526, 533, 348 N.W.2d 159, 163 (1984). We conclude, therefore, that we may review the complaint in this proceeding.

## II. OSHA PREEMPTION

Before turning to the complaint itself, we must consider the possible preemptive effect of OSHA on the prosecution. The act imposes on all employers the duty to furnish safe places of employment. It is administered by the Department of Labor pursuant to regulations adopted by the department. The act provides civil and, in some cases, criminal penalties for intentional violations of the safety and health regulations.

Cornellier argues that the federal act represents Congress's judgment that the best means to provide for and enforce worker health and safety is through a federally-administered program, and that to achieve that goal Congress preempted the field, leaving to the states only certain specified and limited areas of legislative and regulatory concern. He contends that to permit the state to proceed with a criminal prosecution for employer action (or inaction) covered by the act would frustrate the intent of Congress and is thus not allowed. We disagree.

The doctrine of federal preemption is based on the supremacy clause of the United States Constitution. That clause, appearing at Article VI, clause 2, provides that "This Constitution and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land; and

the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." The effect of the clause was summarized in *Hillsborough County v. Automated Med. Labs.*, 471 U.S. 707, 713 (1985):

> Under the Supremacy Clause, federal law may supersede state law in several different ways. First, when acting within constitutional limits, Congress is empowered to pre-empt state law by so stating in express terms. In the absence of express pre-emptive language, Congress' intent to preempt all state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation. Pre-emption of a whole field also will be inferred where the field is one in which "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject."
>
> Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when "compliance with both federal and statute regulations is a physical impossibility," or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." [Citations omitted.]

The party claiming preemption must demonstrate a congressional purpose to supersede the historic police power of the state that is sufficiently clear and manifest to overcome the presumption that state regulation can constitutionally coexist with federal regulation. *Hillsborough County,* 471 U.S. at 715–16.

But even when Congress may be said to have manifested an intent to preempt state regulation in a particular field, a state is not automatically stripped of all authority to act in that area. When the regulated activity touches interests which are especially "deeply rooted in local feeling and responsibility," there is no preemption. *Brown v. Hotel Employees,* 468 U.S. 491, 502 (1984) (citation omitted); *Dietz Construction Co. v. Local 2351,* 43 Wis. 2d 189, 195, 168 N.W.2d 289, 291 (1969) (citation omitted). A state will not be deprived of jurisdiction over matters of exceptional local interest unless there is a "compelling congressional direction" to desist from enforcing local law. *Farmer v. Carpenters,* 430 U.S. 290, 296–97 (1977).

Cornellier argues at length that the terms of the federal act indicate an intention to preempt the entire field of injury or death in the workplace, and we agree that many portions of the act are quite broadly phrased. We do not agree, however, that Congress's intent to occupy the field to the exclusion of state criminal laws is either clearly stated in the act itself or necessarily implied by its language. The state concedes that the act evinces an intent to preempt states from enacting and enforcing their own occupational safety and health standards in the absence of prior federal approval—at least where applicable federal standards exist. We also acknowledge the fact that OSHA provides civil and criminal penalties— ranging up to one year in jail and a fine of $20,000— for violation of those standards. In our opinion, however, neither these provisions nor anything else in the act operate to bar Cornellier's homicide prosecution as violative of the supremacy clause of the United States Constitution.

The act itself provides that its terms "shall [not] be construed to ... enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment." 29 U.S.C. sec. 653(b)(4). We do not believe that, given this language, Congress's preemptive intent is sufficiently "clear and manifest." *Hillsborough County,* 471 U.S. at 715; *First Nat. Savings Foundation v. Samp,* 274 Wis. 118, 138, 80 N.W.2d 249, 261 (1956).

Even if such intent could be ascertained, however, we are satisfied that the state's authority to enforce its criminal laws in the workplace has not been barred or abridged by OSHA. As we have noted, congressional intent to preempt state regulation in a particular field must fail where the activity sought to be regulated touches matters which are "deeply rooted" in local feeling and responsibility. *Brown,* 468 U.S. at 502–03; *Dietz Construction Co.,* 43 Wis. 2d at 195, 168 N.W.2d at 291. In such cases, the state will not be deprived of jurisdiction over such matters of exceptional local interest absent a "compelling congressional direction" to desist from enforcing local law. *Id.* (citation and footnote omitted).

Few interests are as deeply rooted in local feeling and responsibility as the concern for protecting the public against crime. "The right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States." *Kelly v. Robinson,* 479 U.S. —, —, 93 L. Ed. 2d 216, 227 (1986)." It goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government ...." *Patterson v. New*

*York,* 432 U.S. 197, 201 (1977) (citation omitted). As a result, the constitution should not be lightly construed "to intrude upon the administration of [criminal] justice by the individual States." *Id.* Nor should an act of Congress be interpreted "to leave them powerless to avert [violent conduct] without compelling directions to that effect." *United A.A. & A.I.W. v. Wisconsin Emp. Rel. Bd.,* 351 U.S. 266, 275 (1956).

There is nothing in OSHA which we believe indicates a compelling congressional direction that Wisconsin, or any other state, may not enforce its homicide laws in the workplace. Nor do we see any conflict between the act and sec. 940.06, Stats. To the contrary, compliance with federal safety and health regulations is consistent, we believe, with the discharge of the state's duty to protect the lives of employees, and all other citizens, through enforcement of its criminal laws. Wisconsin is not attempting to impose a penalty for violation of any safety regulations. It is only attempting to impose the sanctions of the criminal code upon one who allegedly caused the death of another person by reckless conduct. And the fact that that conduct may in some respects violate OSHA safety regulations does not abridge the state's historic power to prosecute crimes. *Knapp v. Schweitzer,* 357 U.S. 371, 374–75 (1958).

Finally, Cornellier urges us to adopt the reasoning of the only reported case on the subject, *People v. Chicago Magnet Wire Corp.,* 510 N.E.2d 1173 (Ill. App. 1987), although he does not discuss either the court's reasoning or its holding. *Chicago Magnet Wire* held that OSHA preempted the state of Illinois from enforcing its criminal laws in the workplace. However, we find the court's reasoning to be flawed.

First, the Illinois court never acknowledged or discussed the rule that an act of congress is presumed not to preempt state law, or that the burden of showing preemption is upon the person claiming it. Indeed, the court appears to have proceeded on the assumption that the state had the burden to show lack of preemption. *Chicago Magnet Wire*, 510 N.E.2d at 1175. Most importantly, the court failed to recognize the "local interest" exception to the preemption doctrine, which requires a finding of a "compelling congressional direction" as a prerequisite to preemption of state action that is deeply rooted in local feeling and responsibility. For these reasons, we decline to follow the Illinois Court of Appeals.

## III. SUFFICIENCY OF THE COMPLAINT

Homicide by reckless conduct is defined by sec. 940.06(2), Stats., as "an act which creates a situation of unreasonable risk and high probability of death ... and which demonstrates a conscious disregard for the safety of another and a willingness to take known chances of perpetrating an injury." The statute also provides that the definition is to be understood as embracing "all of the elements of what was heretofore known as gross negligence in the criminal law of Wisconsin."

In addition to describing how the fire and explosion occurred, and how it caused Whitt's death, the complaint alleges the following facts: (1) Cornellier controlled Pyro Corporation and ran the day-to-day operations at the Milton plant; (2) he was aware that Pyro was engaged in manufacturing fireworks without a permit in a structure that did not meet state and

local safety requirements, and that, as a result, the manufacturing operations were "illegal"; (3) less than three weeks before the fatal fire and explosion, Cornellier was convicted of six violations of safety ordinances in connection with the manufacture of fireworks at a nearby Milton plant—including storing more than 500 pounds of explosives in a building and manufacturing fireworks in an open frame structure; (4) sometime before the explosion, Cornellier was advised by a business associate of safety concerns at the plant—concerns which had been described by another associate as "a disaster, bags of chemicals left open, everything was a mess, it was very apparent ... that the risks were very high"; and (5), following the explosion and fire, the United States Department of Labor reported nine separate violations of federal safety standards at the plant, including lack of adequate precautions against ignition of flammable vapors, lack of a safe means of escape from the building, mishandling of explosive materials in a manner hazardous to life, failure to implement safety practices to protect employees from explosion and fire, and generally hazardous and unsafe equipment and wiring throughout the building.

Cornellier argues first that the complaint does not identify him as committing any "act," and thus cannot state probable cause because not only is that word used in the statute, but cases involving criminal gross negligence all deal with an affirmative "act." We are not persuaded.

As a general rule, "[t]he requirement of an overt act ... is not inherently necessary for criminal liability. ... Omissions are as capable as producing consequences as overt acts." *State v. Williquette,* 129 Wis. 2d 239, 253, 385 N.W.2d 145, 151 (1986). Indeed, the

*Williquette* court "expressly reject[ed] the ... claim that an act of commission, rather than omission, is a necessary element of a crime. The essence of criminal conduct is the requirement of a wrongful 'act.' This element, however, is satisfied by overt acts, as well as omissions to act where there is a legal duty to act." *Id.* at 251, 385 N.W.2d at 150 (citation omitted).

As indicated, sec. 940.06, Stats., is intended to embrace all of the elements of gross negligence, a term defined as being

> characterized by—"an absence of any care on the part of a person having a duty to perform to avoid inflicting an injury to the personal or property rights of another, by recklessly or wantonly acting *or failing to act* to avoid doing such injury, evincing such an utter disregard of consequences as to suggest some degree of intent, to cause such injury." [Emphasis added.]

*State v. Whatley,* 210 Wis. 157, 163, 245 N.W. 93, 95 (1933), quoting *Astin v. Chicago, M. & St. P. R. Co.,* 143 Wis. 477, 484, 128 N.W. 265, 268 (1910). It is just as much an "act" to deliberately or recklessly refrain from performing a known legal duty as it is to negligently perform that duty. We conclude, therefore, that the statute, impliedly, if not directly, acknowledges that the crime of reckless homicide may be committed by omission, as well as commission.

Nor do we believe that the fact that nearly all of the reported reckless homicide cases in Wisconsin involved affirmative acts establishes a rule of law that only affirmative acts can constitute the offense. "It is a common error in analyzing opinions to assume that the converse of a statement is necessarily true or

758

intended or because X is included in Z that Y is necessarily excluded." *Berg v. State,* 63 Wis. 2d 228, 238, 216 N.W.2d 521, 526 (1974). Simply because the appellate courts have yet to consider a reckless homicide case where the offense is based on the omission to act, rather than on some affirmative conduct, means only that no such case has yet reached the courts. It does not mean that the courts deciding the "active conduct" cases have also ruled for all time on "passive conduct" cases—on fact situations which were not before them.

We note, too, that at least two cases may be said to support the position that the crime may be committed by omission, as well as commission. In *State v. Serebin,* 119 Wis. 2d 837, 350 N.W.2d 65 (1984), a nursing home director was convicted of homicide by reckless conduct when he reduced the staff at the home while continuing to admit new patients to the point of overcrowding, and one of those patients died when, unsupervised, he was allowed to wander outside on a cold night. After discussing the dangers created by the defendant's conduct, the court concluded that his act of "knowingly allow[ing] the probability of such dangers to exist" provided a basis for the jury to infer that he exhibited a conscious disregard for the residents of the home and the willingness to take known chances or risks, thus satisfying the elements of the crime. *Id.* at 846, 350 N.W.2d at 70. In another, more recent case, *State v. Williquette, supra,* the supreme court held that a mother who failed to take action to stop her companion from beating her child could herself be convicted of child abuse.

We have also been referred to cases from other jurisdictions upholding convictions under statutes analogous to sec. 940.06, Stats., for recklessly failing to

perform a legal duty to act. *See, e.g., Albright v. State,* 280 So. 2d 186, 190 (Ala. Crim. App. 1973), *overruled in part, Ex parte Sankey,* (364 So. 2d 362, 363, *cert. denied,* 440 U.S. 964 (1978); *Flippo v. State,* 523 S.W.2d 390, 393–94 (Ark. 1975); *Bergmann v. State,* 468 N.E.2d 653, 661–62 (Ind. App. 1985); *People v. Thomas,* 272 N.W.2d 157, 160 (Mich. App. 1978); *Com. v. Howard,* 402 A.2d 674, 676 (Pa. Super. 1979); and *Davis v. Com.,* 335 S.E.2d 375, 378 (Va. 1985). Textwriters agree. 2 LaFave and Scott, *Substantive Criminal Law,* sec. 7.12(b) at 282–83 (1986); 2 Torcia, *Wharton's Criminal Law,* sec. 172 at 282–84 (14th ed. 1979).

We consider these authorities to state the correct rule and we hold, therefore, that the crime of homicide by reckless conduct under sec. 940.06, Stats., may be committed by one whose conduct may be characterized as a failure to act, just as it may be committed by affirmative conduct.

■■■

We turn to the sufficiency of the allegations in the complaint. A criminal complaint must state probable cause to believe that the person charged has committed a crime. *McCaffrey,* 124 Wis. 2d at 234, 369 N.W.2d at 753. But probable cause is not a technical, legalistic standard of certitude; it is simply a practical, common-sense measure of the plausibility of particular conclusions about human behavior. *Texas v. Brown,* 460 U.S. 730, 742 (1983). These conclusions need not be unquestionably correct, or even more probable than not; they need only be sufficiently more than a mere possibility so that reasonable people would appropriately act on them in the pragmatic affairs of everyday life. *State v. Paszek,* 50 Wis. 2d 619, 624–25, 184 N.W.2d 836, 839–40 (1971). Probable cause, of course, may be established by inferences reasonably drawn from the

facts, as well as directly by the facts themselves. *State ex rel. Evanow v. Seraphim,* 40 Wis. 2d 223, 226, 161 N.W.2d 369, 370 (1968). These facts or inferences need only meet a test of "minimal adequacy," *id.,* and the complaint will be held sufficient if it contains enough information to allow a fair-minded magistrate to reasonably conclude that the charges are not simply capricious, and that further proceedings against the defendant are justified. *State v. Dekker,* 112 Wis. 2d 304, 310, 332 N.W.2d 816, 819 (Ct. App. 1983).

We have summarized the contents of the complaint at some length. We believe the allegations permit the reasonable inference that Cornellier was aware of the multitude of extremely dangerous conditions at the Milton plant prior to, and on the date of, the fire and explosion, and that he did nothing to correct those conditions or safeguard his employees from the known dangers. Similarly, one may infer from the complaint that Cornellier's failure to provide safe storage of explosive materials and a safe electrical system was a substantial factor in causing the explosion—that is, that it was "a factor actually operating and which had substantial effect in producing the death as a natural result." Wis J I—Criminal 1160. The complaint was adequate to establish probable cause.

*By the Court.*—Writ denied.