**SABINE CONSOLIDATED, INC., Appellant,**

v.

**The STATE of Texas, Appellee.**

**Joe TANTILLO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 3–87–051–CR, 3–87–055–CR.**

Court of Appeals of Texas, Austin.

Aug. 31, 1988.

Frank Maloney, S. Ronald Keister, Maloney, Gotcher & Yeager, P.C., Austin, for appellants.

Ken Oden, Co. Atty., Alia Moses, Asst. Co. Atty., Austin, for appellee.

Before POWERS, BRADY and CARROLL, JJ.

## ON MOTIONS FOR REHEARING

CARROLL, Justice.

The prior opinion handed down by this Court on May 4, 1988, is withdrawn and the following is substituted therefor.

Both appellants were charged with criminally negligent homicide and pleaded nolo contendere to the charge after argument on pretrial motions. The trial court accepted the pleas and found both appellants guilty. We will reverse the judgments of the trial court and render judgments of acquittal in both causes.

## BACKGROUND

Appellant Tantillo was the president of appellant Sabine Consolidated, Inc. (Sa-

bine). In September 1985, two construction workers employed by Sabine were killed when the trench they were working in collapsed. Two months later, the Travis County grand jury indicted both Sabine and Tantillo for criminally negligent homicide. The Travis County Attorney followed those indictments with complaints and informations based on the same charge and conduct, and the State chose to proceed on the latter basis.

Appellants were charged under Tex.Pen. Code Ann. § 19.07 (1974), which provides that a person commits an offense if he causes the death of an individual by criminal negligence.[1] Each information stated that [appellant] "fail[ed] to furnish and maintain a place of employment which was reasonably safe and healthful for [the deceased and] fail[ed] to install and maintain and use such methods and processes and devices and safeguards as were reasonably necessary to protect the life and health and safety of [deceased and] fail[ed] to properly slope the wall of an excavation, thereby causing the wall of the excavation to collapse, which caused the death of [the deceased]."

The parties agree that this language means that appellants were charged with a failure to perform certain acts, and that those omissions amounted to criminally negligent conduct. The parties also agree that it is not an offense for a person to omit to perform an act unless a statute makes the specific omission an offense or specifically imposes the duty to act. *See* *Ronk v. State,* 544 S.W.2d 123 (Tex.Cr.App. 1976).

As part of a plea agreement, the parties chose to "try" the cases solely on pretrial motions. Appellants filed motions to quash the informations, contending that the trial court had no jurisdiction over the cases because they were based on occupational safety issues and that field of law has been preempted by the Federal Occupational Safety and Health Act (OSHA) of 1970, 29 U.S.C. § 651 *et seq.* The trial court denied

---

1. A corporation may be considered a "person" for purposes of this statute. *Vaughan & Sons v.* *State,* 737 S.W.2d 805 (Tex.Crim.App.1987).

the motions, and appellants agreed to plead "no contest" while expressly reserving their right to appeal the denial of the motions.

## CONTENTIONS ON APPEAL

According to the State, appellants failed to fulfill the obligations under the general duty clause of the Texas Occupational Safety Act (TOSA), Tex.Rev.Civ.Stat.Ann. art. 5182a, § 3 (1987). It provides that an employer shall furnish and maintain a reasonably safe place of employment. The information in these causes tracked that "duty" language and charged appellants with being criminally negligent by virtue of failing to fulfill a duty to maintain certain safety standards at their place of employment.

Appellants continue to argue that OSHA has completely preempted state action relating to such standards. The State concedes that OSHA standards cover the workplace at issue here, but contends that OSHA does not preempt the exercise of state criminal laws in that workplace.

## DISCUSSION

### I.  OSHA

The Occupational Health and Safety Act was passed "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." 29 U.S.C. § 651(b) (1982). To accomplish this purpose, the Act authorizes promulgation of workplace health and safety standards. To enforce those standards, OSHA provides civil and criminal penalties. The potential range of these penalties closely approximates or exceeds those available under the Texas criminal statutes under which appellants were convicted.

### II.  Preemption

█ The doctrine of preemption derives from the Supremacy Clause, U.S. Const. art. VI, cl. 2, which makes federal law superior to any conflicting state law. A federal statute preempts a state action if either of two conditions obtains: (1) if Congress evidences, expressly *or by implication*, an intent to occupy a given field, the state action is invalid; (2) if Congress has not chosen to occupy a given field, the state action is invalid only to the extent it conflicts with the workings of the federal law. *Silkwood v. Kerr–McGee*, 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984). For convenience, we will label the former type of preemption "absolute" and the latter "conditional."

The question is what effect Congress intended OSHA to have on state laws. The State argues that the state action here does not conflict with federal occupational safety law but rather promotes the policies found in OSHA. We agree. But we find that Congress *implicitly* intended that OSHA accomplish an *absolute* preemption of state laws and actions.

█ OSHA's legislative history suggests that Congress never explicitly considered the question of the interplay between OSHA and state criminal laws, but instead focused entirely on state occupational safety laws, worker compensation laws and traditional civil tort actions. Consequently, our determination of Congressional intent must be found in the plain language of the statute and case law.

This determination turns on two sections of OSHA: Section 653(b)(4) provides:

> "Nothing in this chapter shall be construed to enlarge or diminish or affect in any manner the common law or statutory rights, duties or liabilities of employers and employees under any law with respect to injuries, disease or death of employees arising out of, or in the course of, employment."

Section 667(a) provides:

> "Nothing in this chapter shall prevent any state agency or court from asserting jurisdiction under state law over any occupational safety or health issue with respect to which no standard is in effect under section 655 of this title."[2]

2. Section 655 provides for the promulgation of workplace safety standards.

We read § 667(a) to mean that the states are free to establish and enforce any laws relating to worker safety *so long as* those laws or actions do not entail establishing or enforcing standards affecting occupational safety issues that are addressed by OSHA standards.[3] We are not alone in this interpretation. "[Section 667(a)] has been consistently interpreted by OSHA and the courts to bar the exercise of state jurisdiction over issues addressed by an OSHA standard, even where the state law may arguably be more stringent or where OSHA has not explicitly addressed a provision." *New Jersey State Chamber of Commerce v. Hughey*, 600 F.Supp. 606 (D.N.J.1985).

Based on these sections of OSHA, we find that Congress intended by implication to absolutely preempt the field of workplace safety regulation. We hold that § 667(a) absolutely preempts all state regulation of workplace safety where such regulation would effectively establish state safety standards in areas governed by OSHA.[4]

Nor does § 653(b)(4) save the state action. Courts have held that this section was merely "intended to preserve the existing *private* rights of an injured employee." *Frohlick Crane Service, Inc. v. OSHRC*, 521 F.2d 628, 631 (10th Cir.1975) (emphasis added). Section 653(b)(4) addresses only actions between employers and employees, not the relationship between state and federal law or the right of state prosecuting attorneys to bring criminal prosecutions.

We are not the first state court to consider this conflict. Last year, an Illinois appellate court faced the same issue: "whether state criminal prosecutions based on con-

ditions in the workplace are preempted by [OSHA]." *People v. Chicago Magnet Wire Corp.*, 157 Ill.App.3d 797, 110 Ill.Dec. 142, 510 N.E.2d 1173 (1987), *pet. allowed*, 116 Ill.2d 564, 113 Ill.Dec. 306, 515 N.E.2d 115 (1987).

In that case, an employer was charged with aggravated battery for exposing employees to federally regulated substances and for violating OSHA standards for working conditions. The state alleged that these actions amounted to a breach of the employer's duty to provide a safe workplace for the employees. The defendants argued that OSHA preempted the exercise of even state criminal laws in the area of workplace safety standards. The appellate court agreed with defendants and affirmed the trial court's dismissal of the indictments.

We concur with that court's holding that OSHA preempts any state regulation of workplaces governed by OSHA safety standards, to the extent that such regulation effectively establishes new workplace safety standards. We also believe that the criminal prosecutions here amount to such regulation.

■ While the criminal actions here do not literally purport to establish worker safety standards, the criminal charges were based on a failure to perform a duty found in a statute which *does* prescribe safety standards. The practical effect of such charges is to set up a body of state law affecting workplace safety issues already governed by federal standards promulgated pursuant to § 655 of OSHA. Specifically, the effect is to establish local standards governing the digging of

---

**3.** OSHA also provides for state occupational safety plans that may be enforced if they have been approved by the U.S. Secretary of Labor under OSHA. 29 U.S.C. § 667(b). Texas does not have such a federally approved plan.

**4.** The State cites *Shimp v. New Jersey Bell Tel. Co.*, 145 N.J.Super. 516, 368 A.2d 408 (1976) for the proposition that OSHA does not preempt the field of occupational safety. We disagree.
In *Shimp*, an employer was enjoined from permitting employees to smoke near the plaintiff, who was found to have a commonlaw right to work in a safe workplace. That case is distin-

guishable from the one at bar for two reasons. First, it involves a suit between an employer and employee, not a new cause of action in favor of the State. Second, the employer's action does not implicate § 667(a), which specifically preempts only state regulation of matters for which a federal standard exists under § 655. But *Shimp*'s employer was merely charged with violating the general duty language of OSHA § 654 (failing to provide a safe workplace)—not, as in this case, an OSHA standard promulgated under § 655.

trenches, a subject regulated in detail by 29 C.F.R. §§ 1926.650–1926.653, the OSHA standards for trenching promulgated pursuant to § 655.

Section 667(a) and the cited cases make it clear that such state regulation is entirely preempted by federal law. By using the TOSA language in its complaints, the State implicitly acknowledges that it is attacking the appellants' failure to maintain safe working conditions. But even if the State had not used the TOSA language, criminal prosecution based on the violation of state or local standards for working conditions would still amount to an impermissible attempt to regulate, through the state criminal laws, conduct now regulated under OSHA. By prosecuting appellant for not digging trenches safely, the State intruded on an area covered by OSHA regulations. And if the State could do this, an employer could meet OSHA standards but still be prosecuted by the State, a result inconsistent with OSHA's intent to establish uniform safety standards.

Since our original opinion in this case was handed down, another state intermediate appellate court decided a similar case, and held contrary to this opinion and the *Chicago Magnet* case. *State ex rel. Cornellier v. Black,* 144 Wis.2d 745, 425 N.W. 2d 21 (Ct.App.1988). While both the Illinois and Wisconsin opinions are well-written and persuasive, we must disagree with the latter.

That opinion holds that even if Congress had manifested an intent to preempt state regulation in the occupational safety field, the "congressional intent to preempt must fail where the activity sought to be regulated touches matters which are 'deeply rooted' in local feeling and responsibility." *Cornellier* 425 N.W.2d at p. 24. As support for this "local interest" exception, the Wisconsin court cites *Brown v. Hotel Employees,* 468 U.S. 491, 502–3, 104 S.Ct. 3179, 3185–6, 82 L.Ed.2d 373 (1984). But unlike OSHA, the federal statute in *Brown*

(the National Labor Relations Act) "neither contains explicit preemptive language nor otherwise indicates a congressional intent to usurp the entire field of labor-management relations." *Brown* at 501, 104 S.Ct. at 3185. Thus, the Supreme Court analyzed the preemption issue under the rubric of *conditional*—not absolute—preemption, in which the determinative issue is the compatibility of the state and federal laws at issue. Since we have found that unlike the NLRA, the OSHA statute involved in this case *does* indicate implied congressional intent to usurp the entire field of occupational safety, the local interest exception does not apply.

We are, of course, sympathetic to the plight of the deceased workers' families in these cases, and mindful of the compelling need for effective enforcement of workplace safety standards. We also recognize the legitimate desire of state prosecutors to address what has unquestionably become a serious national problem.

But we are also mindful of the substantial sanctions available to *federal* prosecutors under the Act. Violators of specific OSHA standards or of the federal act's "general duty" clause may face civil penalties of up to $1000 and up to $10,000 for "willful" or repeated violations.[5] OSHA also provides criminal penalties, including fines of up to $10,000 and up to six months' imprisonment for employers who violate standards; the penalties double for repeat violators.[6] It is also likely that an OSHA violator would be subject to even stronger fines—up to $250,000 for individuals and $500,000 for a corporation—if, before November 1, 1987, the employer committed acts constituting a misdemeanor that resulted in an employee's death.[7] Federal law, therefore, permits fines and penalties at least as great as, and potentially far greater than, the state penalty sought to be imposed here.

---

5.  29 U.S.C. § 666(a)–(c).

6.  29 U.S.C. § 666(e).

7.  18 U.S.C. § 3623 (Supp.1986), repealed, Pub.L. 98–473, Title II, § 212(a)(2), Oct. 12, 1984. *See Safety Violations Resulting in Death Punishable by High Fines, Official Says,* 17 O.S.H.Rep. (BNA) No. 12 at 483 (August 19, 1987).

Moreover, the Texas legislature may, if it believes OSHA to be inadequate, successfully submit a Texas occupational safety plan to the Secretary of Labor. Finally, Congress could make its intent clear by explicitly exempting, in § 653(b)(4) or § 667(a), state criminal prosecutions from OSHA preemption. But such action, in the face of legal precedent to the contrary, is not for a state intermediate appellate court to take.

### CONCLUSION

The judgments of the trial court are reversed and reformed to show judgments of acquittal in both causes.

BRADY, J., not participating.