THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DAVID A. BROM, Defendant-Appellee.

Fifth District   No. 5—88—0083

Opinion filed June 23, 1989.

John R. Clemons, State's Attorney, of Murphysboro (Kenneth R. Boyle, Stephen E. Norris, and Raymond F. Buckley, Jr., all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel M. Kirwan and Janet L. Gandy, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Defendant, David A. Brom, was charged by information on February 19, 1986, in the circuit court of Jackson County with the offense of State benefits fraud. (Ill. Rev. Stat. 1985, ch. 38, par. 17—6(a).) Specifically, Brom was charged with giving a false address in obtaining a $500 National Direct Student Loan (NDSL). Brom moved to dismiss, arguing that the Federal statute establishing the NDSL program precludes State prosecutions for crimes involving loans made pursuant to the program. Noting that Congress had enacted a comprehensive statutory scheme for the administration of the loan program, the trial court found that State prosecution was preempted and dismissed the charges.

The sole issue on appeal is whether prosecution under State law is preempted by the Federal statute. Preemption can either be express, or may be inferred where "the scheme of Federal regulation is

sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation." (*Hillsborough County v. Automated Medical Laboratories, Inc.* (1985), 471 U.S. 707, 713, 85 L. Ed. 2d 714, 721, 105 S. Ct. 2371, 2375.) State law may also be preempted where the subject of regulation is one in which "the [F]ederal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Rice v. Santa Fe Elevator Corp.* (1947), 331 U.S. 218, 230, 91 L. Ed. 1447, 1459, 67 S. Ct. 1146, 1152.

In the present case, there is no Federal statutory provision expressly preempting State law, nor do we believe that the area in question is one of such overwhelming Federal dominance that enforcement of State law can be said to be precluded. We must examine the National Direct Student Loan Act to determine whether it is so comprehensive that we may reasonably infer that Congress intended to preclude State prosecution.

The statutes and regulations establishing the NDSL program provide a comprehensive scheme for implementation of the program. The statutes provide, *inter alia*, that any institution of higher education wishing to participate in the program must apply to the Secretary of Education and enter into an agreement which provides for establishment and maintenance of a loan fund and details the purposes for which the fund can be used. (20 U.S.C. §1087bb (1986).) The statutes also specify who is eligible for a loan, provide formulas for determining the amount of the loan, and specify the contents of the loan agreement. (20 U.S.C. §§1087dd, 1087kk through 1087qq (1986).) The statutes further provide a criminal penalty for fraudulently obtaining money from the loan program. 20 U.S.C. §1097(a) (1986).

Participating institutions are required to contribute to the loan fund a sum equal to one-ninth of the Federal capital contribution. (20 U.S.C. §1087cc (1986).) The institution bears the initial responsibility for the collection of defaulted loans, and the institution may avail itself of State civil process to do so.

▮ Upon reviewing the statutes we do not agree with the trial court's conclusion that the criminal penalty provided in the statute indicates an intention by Congress to preempt State law.

The trial court in this case based its decision on *People v. Chicago Magnet Wire Corp.* (1987), 157 Ill. App. 3d 797, 510 N.E.2d 1173, *rev'd* (1989), 126 Ill. 2d 356, 534 N.E.2d 962. In *Chicago Magnet Wire* several company executives were charged with multiple counts of aggravated battery and reckless conduct in connection with harm sustained by some of its employees as a result of numerous violations of

the Occupational Safety and Health Act (OSHA). The first district affirmed the trial court's dismissal of the indictments, holding that State criminal prosecutions for conduct regulated by OSHA were preempted by Federal law. Subsequent to the trial court's decision in the case at bar, our supreme court reversed the decision in *Chicago Magnet Wire*, holding that State criminal law is not preempted merely because it is applied to conduct which is subject to Federal regulation. The purpose and scope of interest of State criminal law is not the same as OSHA safety regulations.

■ The determinative factor in questions of preemption is the nature of the conduct the State is seeking to regulate. That conduct in this case is not the administration of a student loan program, but the act of theft by fraud of State funds. The power to prosecute criminal conduct has traditionally been regarded as within the scope of State superintendence and not to be superseded unless such was the clear and manifest purpose of Congress. The only provision in the statute addressing the conduct of fraud is section 1097(a), which provides for criminal penalties for anyone who wrongfully obtains student loan money. We do not believe this demonstrates a manifest intent on the part of Congress to preempt State laws despite the similarity of conduct in this instance. We note that institutions participating in the NDSL program must contribute capital to the program. In the case of State institutions, State money is contributed to the fund. The State has a concurrent interest in punishing those who obtain a loan by fraud. The object of the State benefits fraud statute is the protection of State money. To find that the criminal penalties provided in the Federal statute preempt State law in this case would commit the protection of this State's legislative interest in protecting State funds solely to the Federal government. We do not believe such was the intent of Congress.

For the foregoing reasons, the judgment of the circuit court of Jackson County is reversed and remanded.

Reversed and remanded.

HARRISON and CHAPMAN, JJ., concur.