SABINE CONSOLIDATED, INC., & Joseph Tantillo, Appellants,

v.

The STATE of Texas, Appellee.

Nos. 1069–88, 1070–88.

Court of Criminal Appeals of Texas, En Banc.

Feb. 13, 1991.

Rehearing Overruled April 3, 1991.

---

Frank Maloney, S. Belinda Davis Wright, S. Ronald Keister, Austin, for appellants.

Ken Oden, County Atty., Alia Moses and Giselle Horton, Asst. County Attys., Robert Huttash, State's Atty. and Matthew W. Paul, Asst. State's Atty., Austin, for State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

BAIRD, Judge.

The issue we consider in this case is whether the Occupational Safety and Health Act of 1970 (OSHA or the Act) (29 U.S.C. § 651 *et seq.* 1982), preempts Texas from prosecuting appellants for criminally negligent homicide under Tex.Penal Code Ann. § 19.07.

Appellant Tantillo was the president of appellant Sabine Consolidated, Inc. (Sabine). Both appellants pled nolo contendere to the offense of criminally negligent homicide. Sabine was fined $10,000.00, and Tantillo was sentenced to confinement for 180 days, probated for one year, and fined $2,000.00. The charges arose from an excavation trench cave-in on September 10,

1985, in which two employees of Sabine were killed when the walls of the trench collapsed, burying them.

The Court of Appeals reversed the convictions and ordered acquittals. *Sabine Consolidated, Inc. v. State*, 756 S.W.2d 865 (Tex.App.–Austin, 1988). The Court of Appeals held that the OSHA provisions reflect implied intent by Congress to usurp the entire field of occupational safety such that criminal prosecution, based upon the violation of state or local standards for working conditions, invades that area of occupational safety preempted by OSHA. We granted the State's petition for discretionary review to address the preemption issue.

Tex.Penal Code Ann. § 19.07 provides that a person commits an offense if he causes the death of an individual by criminal negligence.

The State charged appellants with criminally negligent homicide by alleging a failure to act; to so charge there must be a statutory duty to act. See *Billingslea v. State*, 780 S.W.2d 271 (Tex.Cr.App.1989). To establish a duty to act, the State relied upon the Texas Occupational Safety Act, (TOSA), V.A.C.S., Article 5182a, § 3, which provides:

> Every employer shall furnish and maintain employment and a place of employment which shall be reasonably safe and healthful for employees. Every employer shall install, maintain, and use such methods, processes, devices, and safeguards, including methods of sanitation and hygiene, as are reasonably necessary to protect the life, health, and safety of such employees, and shall do every other thing reasonably necessary to render safe such employment and place of employment.

The informations alleged, in pertinent part, that appellants were criminally negligent by:

fail[ing] to furnish and maintain a place of employment which was reasonably safe and healthful for the said [deceased], an employee of the said [appellant], and the said [appellant] did then and there fail to install and maintain and use such methods and processes and devices and safeguards as were reasonably necessary to protect the life and health and safety of the said [deceased], by then and there failing to provide an adequate shoring system for the wall of an excavation and by then and there failing to properly slope the wall of an excavation, thereby causing the wall of the said excavation to collapse, which caused the death of the said [deceased], when the said [appellant] had a duty to furnish and maintain a place of employment which was reasonably safe and healthful for the said [deceased] and the said [appellant] had a duty to install and maintain and use such methods and processes and devices and safeguards as were reasonably necessary to protect the life and health and safety of the said [deceased].

## OSHA

The purpose and policy of OSHA is "to assure so far as possible every working man and woman in the nation safe and healthful working conditions and to preserve our human resources" 29 U.S.C. § 651(b). To further that purpose Congress authorized the creation of occupational safety and health standards and regulations for "businesses affecting interstate commerce," 29 U.S.C. § 651(b)(3), and enacted a general duty provision for such employers. 29 U.S.C. § 654.[1]

The Act also provides for civil and criminal penalties for violations of the general duty provision or any standard, rule, order, or regulation promulgated pursuant to the Act. 29 U.S.C. § 666. Under this section the following penalties may be assessed:

---

1. Section 654 states:
   (a) Each employer—
   (1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;

   (2) shall comply with occupational safety and health standards promulgated under this Act.
   (b) Each employee shall comply with occupational safety and health standards and all rules, regulations, and orders issued pursuant to this Act which are applicable to his own actions and conduct.

for a "willful or repeated violation" of specific OSHA standards or the general duty provision, a civil penalty of not more than $10,000.00 may be assessed for each violation; for a "serious violation", meaning there is a substantial probability that death or serious physical harm could result from a condition that exists or from practices or methods in place, a civil penalty of not more than $1,000.00 shall be assessed; for a violation determined not to be serious, a civil penalty of up to $1,000.00 may be assessed; for failure to correct a cited violation, a civil penalty of up to $1,000.00 a day until corrected; for a "willful violation" of OSHA standards which cause death, a criminal penalty of imprisonment for not more than 6 months and/or a fine of not more than $10,000.00 may be assessed; slightly stiffer penalties for one previously convicted of such violation(s); and finally, criminal penalties ranging from imprisonment for 6 months and a fine of between $1,000.00 and $10,000.00 may be assessed for giving advance notice of inspection or making false statements for information required under the Act.

Despite the availability of these penalties OSHA is primarily prophylactic in nature. *Whirlpool Corp. v. Marshall*, 445 U.S. 1, 12, 100 S.Ct. 883, 890, 63 L.Ed.2d 154, 164 (1980). The Act seeks to establish standards and regulations to prevent death or injury from occurring in the workplace.

## PREEMPTION

■ The doctrine of preemption is based upon the supremacy clause of the United States Constitution, Article VI, cl. 2, which invalidates state laws that "interfere with, or are contrary to," federal law. *Gibbons v. Ogden*, 9 Wheat. 1, 211, 6 L.Ed. 23, 73 (1824). Federal law may supersede state law in three ways. First, Congress can expressly state that the particular federal law preempts state law. *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604, 614 (1977). Second, Congressional intent to preempt can be implied from the scheme of federal regulation which is sufficiently comprehensive to make a reasonable inference that Congress left no room for the states to

supplement it. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447, 1459 (1947). Implied intent can also be found where the federal interest in the field is so strong that it precludes state laws on the same subject. Third, federal law preempts state law when the state law conflicts with the federal law. This conflict occurs when compliance with federal and state laws is, in effect, a physical impossibility, *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–143, 83 S.Ct. 1210, 1217–1218, 10 L.Ed.2d 248, 256–257 (1963), or when the state law is "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581, 587 (1941). See also *Hillsborough County, Fla. v. Auto. Med. Labs.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714, 721 (1985).

OSHA permits states to preempt federal standards of occupational safety and health by adopting their own such standards and plan for enforcement, which must be approved by the Secretary of Labor. 29 U.S.C. § 667. The Act also specifies that states may assert "jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect under section 6 [29 USC § 655]." 29 U.S.C. § 667(a). Finally, § 653(b)(4) states:

Nothing in this Act shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.

## EXPRESS PREEMPTION

■ We will first address the express preemption issue.

Section 667 states, in part:

Nothing in this Act shall prevent any State agency or court from asserting jur-

isdiction under State law over any occupational safety or health issue with respect to which no standard is in effect under section 6 [29 USC § 655].

Any State which, at any time, desires to assume responsibility for development and enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated under section 6 [29 USC § 655] shall submit a State plan for the development of such standards and their enforcement.

Under this section Congress clearly preempted state occupational safety and health laws and standards for "businesses affecting interstate commerce" unless the State takes steps to establish its own program in accord with OSHA requirements for substituting state standards. However, we do not believe that Congress intended that state criminal laws which affect or involve occupational safety and health be preempted. See and cf. *New York Dep't. of Social Services v. Dublino*, 413 U.S. 405, 415, 93 S.Ct. 2507, 2514, 37 L.Ed.2d 688, 696 (1973). There is no express language to that effect and other provisions indicate no such intent.

■ The term "occupational safety and health standard" is defined in the Act as "a standard which requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. § 652(8). The criminally negligent homicide statute is not a standard as defined by OSHA, even though, as in this case, it involves a duty. Tex.Penal Code Ann. § 19.07 does not set conditions or establish practices or processes to ensure a safe workplace. Surely, it may foster the development of standards to do just that. Unlike OSHA, which is designed to establish standards to prevent death or injury from occurring, criminal laws are reactive, punishing for acts com-

mitted. While OSHA has penalty provisions for violations of standards and duties, the provisions are not designed to cover a broad range of criminal conduct. *Id.* § 666. They are limited to "willful" conduct when a death results, rather than negligent conduct. Also, the penalty range is primarily civil in nature and fairly minor as compared to criminal penalties which include a broad range from misdemeanor punishment for negligent homicide to felony punishment for "intentional" murder.

In *People v. Chicago Magnet Wire Corp.*, 126 Ill.2d 356, 128 Ill.Dec. 517, 534 N.E.2d 962, cert. denied *sub nom. Asta v. Illinois*, —— U.S. ——, 110 S.Ct. 52, 107 L.Ed.2d 21 (1989), the Illinois Supreme Court reversed an appellate court decision which had found state criminal law preempted by OSHA.[2] In disposing of a claim of express preemption on the grounds that state criminal laws implicitly enforced occupational health and safety standards, the Court stated:

> Although the imposition of sanctions under State penal law may effect a regulation of behavior as OSHA safety standards do, regulation through deterrence, however, is not the sole purpose of criminal law. For example, it also serves to punish as a matter of retributive justice. Too, whereas OSHA standards apply only to specific hazards in the workplace, criminal law reaches to regulate conduct in society in general. In contrast, occupational health and safety standards are promulgated under OSHA primarily as a means of regulating conduct to prevent injuries in the workplace.

*Id.* 128 Ill.Dec. at 521, 534 N.E.2d at 966. See also *People v. Hegedus*, 432 Mich. 598, 443 N.W.2d 127 (1989).

Nowhere in the Act is there language stating that Congress preempted any other laws or *all laws affecting* workplace safety and health. Section 653(b)(4) indicates the opposite as it specifically and broadly allows and does not "in any manner affect

---

**2.** At the time of its opinion, the Court of Appeals did not have the benefit of the decision of the *Illinois Supreme Court in People v. Chicago Magnet Wire Corp.*, 126 Ill.2d 356, 128 Ill.Dec. 517, 534 N.E.2d 962 (1989), which reversed the lower court opinion relied upon by the Court of Appeals in this cause.

workmen's compensation law or ... the common law or statutory rights, duties, or liabilities of employers and employees *under any law* with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment." (Emphasis added).

The Court of Appeals and appellants argue that this language reserves only private rights, citing *Frohlick Crane Service, Inc. v. OSCHR*, 521 F.2d 628, 631 (10th Cir.1975); *Jeter v. St. Regis Paper Co.*, 507 F.2d 973 (5th Cir.1975). While such interpretation is plausible, the language itself is subject to a broader interpretation that includes state criminal laws—"under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment." Given the reservation of other private rights in the broad language of § 653(b)(4), and their incidental regulatory effect, it makes sense that criminal laws were likewise not meant to be preempted.

In *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984), the Supreme Court upheld an award for punitive damages in a state tort law action based upon injuries caused by excessive radiation suffered by Karen Silkwood when she was an employee of Kerr–McGee. Kerr–McGee argued that punitive damages were unauthorized because it punished and deterred conduct related to radiation hazards, an area of nuclear safety preempted by the federal government. The Supreme Court held that Congress had indicated that state tort law remedies were not foreclosed. The Court stated:

> It may be that the award of damages based on the state law of negligence or strict liability is regulatory in the sense that a nuclear plant will be threatened with damages liability if it does not conform to state standards, but that regulatory consequence was something that Congress was quite willing to accept.

*Id.* at 256, 104 S.Ct. at 625.

In *Silkwood*, the Court upheld an action based upon state law that was not specifically provided for in the federal law and which affected an area preempted by federal law. The instant case is similar. Congress specifically permitted the "regulatory consequence" of state tort law upon OSHA. 29 U.S.C. § 653(b)(4). If, in enacting OSHA, Congress was explicitly willing to allow the incidental regulation caused by damage awards under state tort law through § 653(b)(4), "it cannot plausibly be argued that it also intended to preempt State criminal law because of its incidental regulatory effect on workplace safety." *Chicago Magnet Wire Corp.*, supra 128 Ill.Dec. at 523, 534 N.E.2d at 968. We conclude that Congress did not *expressly* preempt enforcement of state criminal laws in an area regulated by OSHA.

The purpose of state criminal laws and criminally negligent homicide in particular, is not to set standards for workplace safety. The purpose is to punish one for an illegal act as defined by the penal code, whether that act be done in the workplace or elsewhere. OSHA is not designed to deal with state criminal offenses. Simply because a state criminal law may incidentally concern an area controlled by federal law, this fact alone does not make the state law impermissible. Therefore, state criminal laws are not preempted by federal law aimed at safeguarding the workplace.

## IMPLIED PREEMPTION

The second way in which state law may be preempted by federal law is where preemption can be implied from the federal regulation. The Court of Appeals held that OSHA, in particular § 667(a), reflects an implied intent by Congress to preempt the field of occupational safety and health such that even state criminal laws that affect that field are forbidden or precluded. *Sabine Consolidated, Inc.*, 756 S.W.2d at 869. That Court further held that the State's criminal prosecution based upon a statute that prescribes safety standards, in effect, established local standards governing trenches when OSHA had already regulated that area. See 29 CFR §§ 1926.650–1926.652. The Court of Appeals reasoned that even if the State had not used the TOSA language, "criminal prosecution based on the violation of state

or local standards for working conditions would still amount to an impermissible attempt to regulate, through the state criminal laws, conduct now regulated under OSHA." *Id.*

In *Auto. Med. Labs,* 471 U.S. 707, 105 S.Ct. 2371, the Supreme Court stated two ways in which implied intent to preempt can be shown: (1) where the scheme of federal regulation is so comprehensive as to leave no room for the state to supplement it or (2) where the federal interest is so strong that it overrides any state action on the same subject. In the instant case the Court of Appeals found implied intent to preempt because the federal regulation is sufficiently comprehensive that Congress left no room for the States to supplement it. Section 667(a) provides that a state may develop its own standards where no federal standard exists and that a state may substitute its own program if approved by the Secretary of Labor. The Court of Appeals discounts the language of § 653(b)(4), as applicable only to private rights. *Sabine Consolidated, Inc.,* 756 S.W.2d at 868.

Much of our previous discussion of §§ 667 and 653(b)(4) also disposes of the implied intent theory. Given that workers' compensation, common law claims and state tort claims can exert a similar kind of regulatory effect as the enforcement of criminal laws for acts occurring in the workplace, we cannot reasonably conclude that Congress would preempt criminal laws while allowing other causes of action. Otherwise, an employer who causes the death of an employee by providing unsafe working conditions would be able to escape state criminal prosecution and suffer only the comparatively minor punishment provided by OSHA. In light of § 653(b)(4) and the several specified actions available, such a result does not seem implied or intended. Thus, we find the federal regulations do not bar the regulatory consequence of state criminal actions.

The federal interest in workplace safety is not so great as to preempt all state interest in this area. First, under § 667, a state may establish its own standards to govern the workplace, subject to approval by the Secretary of Labor. Second, § 653(b)(4) leaves available state law claims in this field. Third, the State's own interest in regulating health and safety matters "is primarily, and historically, a matter of local concern." *Auto. Med. Labs,* 471 U.S. at 719, 105 S.Ct. at 2378, 85 L.Ed.2d at 725. This local interest, combined with the State's traditional interest in its own police power to enforce criminal laws, demonstrate that the federal interest does not prevent the state from asserting its traditional powers in enforcing criminal laws, despite the incidental impact of such laws on OSHA.

### CONFLICT PREEMPTION

The last way in which state law may be preempted by federal law is when the state law conflicts with the federal law either where: 1) compliance with state and federal law is, in effect, a physical impossibility, see *Florida Lime & Avocado Growers, Inc,* supra; or 2) the state law conflicts with the purpose and objectives of Congress and the federal law. *Auto. Med. Labs,* 471 U.S. 707, 105 S.Ct. 2371.

Neither the Court of Appeals nor appellants suggest that conflict preemption exists. Enforcement of the criminally negligent homicide statute in this case does not conflict with any regulations or provisions of OSHA so that compliance with state and federal law is an impossibility. The duty with which appellants were charged with violating is a general duty similar to the general duty provided for in § 654(a). This statute certainly does not hinder the purpose and objectives of OSHA. If anything, it supports the OSHA duty and standards. Thus, the doctrine of conflict preemption does not support the conclusion that OSHA preempts prosecution under state criminal laws.

### CONCLUSION

Several other states have addressed this same issue, all of them concluding that state criminal laws were not preempted by OSHA. *Chicago Magnet Wire Corp.,* supra; *People v. Hegedus,* supra; *People v. Pymm,* 76 N.Y.2d 511, 563 N.E.2d 1, 561

N.Y.S.2d 687 (1990); *State ex rel. Cornellier v. Black,* 144 Wis.2d 745, 425 N.W.2d 21 (1988); see also *People v. Brom,* 185 Ill. App.3d 411, 133 Ill.Dec. 534, 541 N.E.2d 745 (1989) and *Commonwealth v. Morris,* 394 Pa.Super. 185, 575 A.2d 582 (1990).[3]

The application of our criminal laws, in this instance § 19.07, supra, to conduct in the workplace does not present an obstacle to the accomplishment of OSHA's stated goal of assuring employees safe and healthful working conditions. The prosecution of appellants for criminally negligent homicide was proper. We reverse the judgment of the Court of Appeals and remand the case to the Court of Appeals to consider appellant's remaining points of error.

CLINTON, J., concurs in the result.

TEAGUE, J., finding that the opinion by the Third (Austin) Court of Appeals, see *Sabine Consolidated, Inc. v. State,* 756 S.W.2d 865 (Tex.App.—Austin 1988), has more than adequately disposed of the issue whether OSHA preempts Texas from prosecuting appellants for criminally negligent homicide under Tex.Penal Code Ann. § 19.07, and correctly decides that issue in favor of appellants, and against the State, respectfully dissents.

MALONEY, J., not participating.

---

**3.** We also note that a congressional committee on government operations approved and adopted a report recommending to Congress that "OSHA should take the position that the States have clear authority under the Federal OSH Act, as it is written, to prosecute employers for acts against their employees which constitute crimes under State law." *Chicago Magnet Wire Corp.,* 128 Ill.Dec. at 525, 534 N.E.2d at 970, citing Report of House Comm. on Government Operations, *Getting Away with Murder in the Workplace: OSHA's Non-use of Criminal Penalties for Safety Violations,* H.R.Rep. No. 1051, 100th Cong., 2d Sess. 9 (1988).