

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0881-20

## CRYSTAL MASON, Appellant

### v.

## THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

McClure, J., delivered the opinion of the Court in which Keller, P.J., and Hervey, Richardson, Newell, Keel, and Walker, JJ., joined. Yeary, J., filed a concurring and dissenting opinion. Slaughter, J., filed a dissenting opinion.

## O P I N I O N

In 2018, Appellant Crystal Mason was convicted of illegal voting, then a second-degree felony, and sentenced to five years' confinement.[1] The Second Court of Appeals affirmed her conviction. *Mason v. State*, 598 S.W.3d 755, 763 (Tex. App.—Fort Worth

---

[1] In 2021, the Texas Legislature reclassified this offense as a Class A misdemeanor. Act of Aug. 31, 2021, 87th Leg., 2nd C.S., ch.1, § 9.03, sec. 64.012(b), 2021 Tex. Sess. Law Serv. 3783, 3812 (codified at Tex. Elec. Code Ann. § 64.012(b)).

2020). Appellant filed a petition for discretionary review with this Court, arguing that the court of appeals erred in three ways: first, in holding that her unawareness about her ineligibility to vote "was irrelevant to her prosecution;" second, by interpreting the Illegal Voting statute to criminalize the good faith submission of provisional ballots where individuals turn out to be incorrect about their eligibility to vote (contrary to the federal Help America Vote Act); and third, by holding that Appellant "voted in an election" when she submitted a provisional ballot that was never counted. In a supplemental brief, Appellant argued that Senate Bill 1's retroactive change to the Texas Election Code nullified her conviction. As to grounds two and three, we hold that the Help America Vote Act does not preempt the Illegal Voting statute and that the court of appeals did not err by concluding that Appellant "voted." However, as to ground one, the court below erred by failing to require proof that the Appellant had actual knowledge that it was a crime for her to vote while on supervised release. We remand to that court to evaluate the sufficiency of the evidence under the correct interpretation of the statute.

**BACKGROUND**

In the 2004 general election, Appellant filled out an Affidavit of Provisional Voter form. The form included the following affirmation: the voter had not been finally convicted of a felony, or if a felon, had completed all punishment including any term of incarceration, parole, supervision, or period of probation, or had been pardoned. The form served as an application for voter registration in Tarrant County from that point forward. Tarrant County

accepted the form and registered Appellant as a voter. Appellant voted in the 2008 elections in Tarrant County.

In 2011, Appellant pled guilty to a felony count of conspiracy to defraud the United States arising out of a phony tax preparation scheme. *United States v. Mason-Hobbs*, Nos. 4:13-CV-078-A, 4:11-CR-151-A-1, 2013 WL 1339195, at *1 (N.D. Tex. Apr. 3, 2013). The federal court sentenced her to five years' imprisonment and three years of supervision after her release and ordered her to pay full restitution to the U.S. government ($4,206,805.49). *Id.* Her conviction became final by 2013. *Id.*

In accordance with requirements of the National Voting Rights Act (NVRA)[2], Tarrant County received a report which included Appellant's felony conviction and sentence. In 2013, the Tarrant County Elections Administration (TCEA) mailed a Notice of Examination to Appellant's listed home address. The notice stated that TCEA was examining her registration based on information about her felony conviction and informing her that if she did not reply within 30 days with adequate information to show her qualification to stay registered, her registration would be cancelled. *See* Tex. Elec. Code Ann. § 16.033.

When the 30-day deadline passed without response, TCEA mailed a notice to the same address stating that Appellant's voter registration had been cancelled and that she

---

[2] The prosecuting United States Attorney gave written notice of Mason's conviction to the Texas Secretary of State, the "chief State election official" under Section 20507(g)(1) of the National Voting Rights Act ("NVRA"). 52 U.S.C.A. §§ 20507(g)(1), 20509 (West 2015); *see* Tex. Elec. Code Ann. § 31.001(a). In turn, the Texas Secretary of State provided the same information to the Tarrant County Election Administration, the "voter registration officials of the local jurisdiction" in which Mason resides. *Id.* § 20507(g)(5).

was entitled to a hearing and appeal. When both notices were mailed, Appellant was in federal custody serving her sentence, and she testified at trial that she did not receive the notices. Neither notice was returned to TCEA, however. TCEA cancelled Mason's registration.

After finishing her prison term and while on supervised release, Appellant reported to her probation officer that she would resume living at the same address as before. At trial, a supervisor from the probation office testified that no one from that office told Appellant she was ineligible to vote while on supervised release.

On November 8, 2016, Appellant went to her designated polling place for the general election. The election worker checking the registration roll could not find her name, so workers offered to let her complete a provisional ballot, which she agreed to do. She completed the affidavit, just as she had done in 2004, and electronically cast her provisional ballot. The election worker who had checked the registration roll reported a concern about Appellant's provisional ballot to the election judge for Appellant's precinct, who happened to be Mason's neighbor. The election judge then reported the concern to the district attorney's office. Appellant's ballot was not counted in the election.

Appellant was ultimately indicted for voting in an election in which she knew she was not eligible to vote. The indictment alleged that she had not been fully discharged from her sentence for the felony conviction. She waived a jury trial and proceeded to a bench trial. Her defensive theories at trial were that she did not read the admonishments in the

Affidavit of Provisional Voter, the government never told her she could not vote as a convicted felon, and she would not have voted had she known she was ineligible.

After conviction, Appellant filed a motion for new trial, which the trial court denied after holding an evidentiary hearing. The court issued written findings and conclusions, including that any rational factfinder could have found the State proved "the essential elements that the Defendant voted and that she was ineligible to vote," and that she "voted" when she cast her provisional ballot.

**DIRECT APPEAL**

On direct appeal, Appellant argued five grounds: the evidence was both legally and factually insufficient to support the guilt finding; Texas's Illegal Voting statute was preempted by the part of the Help America Vote Act that grants the right to cast a provisional ballot; her conviction resulted from ineffective assistance of counsel; and the Illegal Voting statute was unconstitutionally vague as applied to her.

The Second Court of Appeals overruled Appellant's grounds and held, relevant to this proceeding, that the evidence was sufficient to support her conviction. *Mason*, 598 S.W.3d at 781, 789. The court below said that the State needed only to prove that Appellant voted while knowing of the existence of the condition that made her ineligible—in this case, that she was on federal supervised release after imprisonment for a final felony conviction. *Id*. at 770. The court below relied on two cases for the proposition that the State does not have to prove that the defendant subjectively knew that voting with that condition made the defendant ineligible to vote or knew that voting while being ineligible was a

crime. In *Thompson v. State*, the defendant, who had a conviction for a felony assault with intent to murder, voted in a local mayoral election. 26 Tex. Ct. App. 94, 97, 9 S.W. 486, 486 (1888). The Texas Court of Appeals[3] upheld the conviction for illegal voting, holding:

> As the defendant knew the fact that he had been convicted of the offense of assault with intent to murder, it must be conclusively presumed that he knew the legal consequences of such conviction; that he knew that the law declared that offense to be a felony, and that the Constitution and the law made one of the consequences of the conviction his disqualification to vote. He can not [sic] be heard to deny such knowledge, and it was not necessary that it should be proved that he had such knowledge, because the presumption of law supplied and dispensed with such proof.

9 S.W. at 486–87.[4]

Recently, the Fifth Court of Appeals relied on *Thompson* when upholding the conviction of a person who was tried as a party to someone else's illegal voting. *Medrano v. State*, 421 S.W.3d 869, 884–85 (Tex. App.—Dallas 2014, pet. ref'd). Medrano had asked several family members, including his niece Veronica, to change their addresses on their voter registration cards so that they could vote for him in the precinct where he was running for justice of the peace. *Id*. at 874–76. On appeal, Medrano argued that the State needed to

---

[3] The *Thompson* case predates the State's adoption of article V, section 1 in the Texas Constitution, which created the Court of Criminal Appeals.

[4] This Court has cited *Thompson v. State* only three times, most recently in 1914. In 1937, University of Texas law professor George Wilfred Stumberg criticized the reasoning in *Thompson* as unsound:

> The rule that ignorance of the law does not excuse, as contained by the Penal Code, could hardly have been intended by the framers of the Code to be applicable when the specific crime requires *knowledge* for guilt. . . . When the legislature requires knowledge for guilt, it is only fair to assume that it meant what it said and did not mean *presumed* knowledge when there was no knowledge in fact.

*Mistake of Law in Criminal Cases*, 15 Tex. L. Rev. 287, 297 n. 34 (1937).

prove that Veronica knew she was ineligible rather than proving she knew the circumstances rendering her ineligible. *Id* at 884. In other words, Medrano argued that "if Veronica did not know what she was doing was illegal, she cannot have voted illegally." *Id*. The *Medrano* court disagreed, holding:

> In *Thompson*, the defendant was charged with voting "knowing" he was not a "qualified voter," and here, Veronica was charged with voting when she knew she was not an eligible voter. Just as the State did not need to prove that Thompson knew the offense was a felony or that he was therefore not qualified to vote (only that he knew he had been convicted of an assault with the intent to commit murder), the State did not need to prove Veronica subjectively knew she was not eligible to vote; it needed only to prove she voted in the March 2010 Dallas County Primary Election when she knew she was not a resident of the precinct for which she was voting. Ignorance of the law is no excuse.

*Medrano* at 885.

Applying the reasoning in *Thompson*, the *Medrano* court determined that the State provided evidence—namely, that Veronica knew when she registered to vote and when she voted that she was not a resident of the address on her voter registration card and did not intend to reside there—proving "beyond a reasonable doubt that Veronica knew the facts making her ineligible to vote, which is all that was required." *Id*.

Relying on these cases, the Second Court of Appeals held similarly that the State did not need to prove Mason knew she was ineligible to vote but only that Mason voted while knowing she was on federal supervised release after being imprisoned on a felony conviction. *Mason*, 598 S.W.3d at 770.

**PETITION FOR DISCRETIONARY REVIEW**

Appellant filed for discretionary review, arguing that the court of appeals' holding conflicts with our recent decision in *Delay v. State*, in which we held that when the *mens rea* element of an Election Code offense is "knowingly," the accused must "actually realize" the conduct violated the Election Code. 465 S.W. 3d 232, 251–52 (Tex. Crim. App. 2014). Specifically, this Court held that "knowingly" undertaking an act in violation of the Election Code means the actor must be aware not only of the circumstances that render conduct unlawful but also of the fact that the conduct violates the Election Code. *Id*. at 250. Appellant argues that she explicitly testified she did not know she was ineligible to vote due to being on federal supervised release and that the State's only evidence regarding Appellant's knowledge was based on speculation she had read the provisional ballot affidavit.

During the pendency of this PDR, the Texas Legislature added new language to the Illegal Voting statute via Senate Bill 1 (S.B.1) during a special session, effective December 2, 2021. Act of Aug. 31, 2021, 87th Leg., 2d C.S., § 9.03, sec. 64.012, 2021 Tex. Sess. Law Serv. 3783, 3812 (codified at Tex. Election Code § 64.012). Election Code section 64.012(c) now specifies that a person "may not be convicted solely upon the fact that the person signed a provisional ballot affidavit under Section 63.011 unless corroborated by other evidence that the person knowingly committed the offense." *Id*. The amendment clarifies that a provisional ballot affidavit alone is insufficient evidence that the person

knowingly committed the offense. Corroboration by other evidence is required for conviction.

Furthermore, the Legislature included a savings clause in S.B. 1 that applied the legislation to anyone who committed an offense before, on, or after the effective date of the Act, except for final convictions. *Id.* at § 9.04. The law's effective date was December 2, 2021. Appellant's PDR of her criminal conviction for illegal voting was pending at that time, so her conviction was not final.

After S.B. 1 became effective, Appellant filed, with this Court, a supplemental brief arguing that her conviction should be reversed because the amendment to section 64.012 decriminalized her conduct. Appellant states that she was convicted based on her submission of a provisional ballot that was rejected and never counted. Appellant argues that with the enactment of subsection 64.012(c) of the Texas Election Code, her submission of a provisional ballot affidavit is not sufficient to demonstrate that she actually knew she was ineligible to vote. The State disagrees, stating that the new law does not substantively change existing law but clarifies that a good faith mistake made by an ineligible voter who did not know she was ineligible would not result in a conviction based solely on a signed provisional ballot affidavit. The State argues that the record contains sufficient evidence, beyond Mason's signature on the provisional ballot affidavit, showing that Appellant knew she was ineligible to vote when she cast a provisional ballot.

We agree with the State that the change to the statute alone does not decriminalize Appellant's conduct. This is because the Legislature's use of the word "solely" means,

unambiguously, that merely signing an affidavit is not, alone, sufficient evidence to secure a conviction for illegal voting; there must be other evidence to corroborate that the defendant knew she was ineligible to vote.

**ANALYSIS**

**I.**

In Appellant's first ground, she argues that the court of appeals erred by concluding that her knowledge of her ineligibility to vote was irrelevant to her prosecution. We agree that this Court's precedent and the legislative history support the conclusion that actual knowledge of one's ineligibility is an element of the offense of illegal voting.

1. *Applying the Mens Rea of Knowingly*

The Court's decision in *Delay v. State* provides guidance here. 465 S.W. 3d 232. In that case, former Republican Congressman Tom Delay was convicted of money laundering and conspiracy to launder money based on a series of political contributions from corporations that allegedly violated section 253.003(a) of the Election Code. *Id.* at 238–39. This section criminalizes "knowingly mak[ing] a political contribution in violation of [the Election Code]." Tex. Elec. Code. Ann. § 253.003(a). The question in *Delay* was "whether the word 'knowingly' in the statute modified merely the making of a campaign contribution, or whether it also modified the statutory circumstance that the contribution was made 'in violation of' the Election Code." *Delay*, 465 S.W.3d at 250. In other words, we were required to construe "how far down the sentence the word 'knowingly' is intended to travel[.]" *Id.* (citing *Liparota v. United States,* 471 U.S. 419, 424 n.7, (1985)).

In doing so, this Court recognized that when construing a penal provision that appears outside the Penal Code, any ambiguity should be resolved in favor of the accused. *Delay,* 465 S.W.3d at 251 n. 69 (citing *State v. Johnson,* 219 S.W.3d 386, 388 (Tex. Crim. App. 2007) ("We are mindful of the proposition that criminal statutes outside the penal code must be construed strictly, with any doubt resolved in favor of the accused."); *see also State v. Rhine,* 297 S.W.3d 301, 309 (Tex. Crim. App. 2009) ("Although the common-law rule that a penal statute is to be strictly enforced does not apply to the Penal Code [citing Tex. Penal Code § 1.05(a)], criminal statutes outside the penal code must be construed strictly, with any doubt resolved in favor of the accused.") (footnote and internal quotation marks omitted)).

We applied this doctrine, adapted from the Rule of Lenity,[5] to the facts in *Delay.* We held that "knowingly" undertaking an action "in violation of the Election Code" means "that the actor [is] aware, not just of the particular circumstances that render his otherwise-innocuous conduct unlawful, but also of the fact that undertaking the conduct under those circumstances in fact constitutes a 'violation of' the Election Code." *Delay*, 465 S.W.3d at 250. Stated another way, a statutory requirement that an individual "knowingly" commit an offense under the Election Code requires the State to prove both knowledge of

---

[5] The Rule of Lenity is defined as "The judicial doctrine holding that a court, in construing an ambiguous criminal statute that sets out multiple or inconsistent punishments, should resolve the ambiguity in favor of the more lenient punishment." *Rule of Lenity*, *Black's Law Dictionary* (11th ed. 2019). In 2015, the Rule of Lenity was formally codified to ensure that all criminal laws, if ambiguous, are read in favor of the defendant. *See* Tex. Gov't Code § 311.035.

underlying facts giving rise to a circumstance and an "actual[] realiz[ation]" that the specified circumstance renders the conduct unlawful. *Id.* at 250, 252.

The court of appeals acknowledged *Delay* but held it was distinguishable here because section 64.012(a)(1)'s knowledge requirement clearly applied to the person's knowledge of the conduct, whereas the statute under which Delay was convicted contained an ambiguous knowledge requirement. *Mason*, 598 S.W.3d at 768, n.12. In other words, the court below concluded that the Rule of Lenity does not apply to Appellant because the statute in this instance is not ambiguous. While we agree with the court below that the knowledge requirement is not ambiguous, we disagree that *Delay* is not applicable.

Under canons of statutory construction, a reviewing court is to construe a statute according to its plain language unless the language is ambiguous, or the interpretation would lead to absurd results that the Legislature could not have intended. *Williams v. State*, 253 S.W.3d 673, 677 (Tex. Crim. App. 2008). To do so, the reviewing court focuses on the literal text of the statutory language in question, reading it in context and construing it "according to the rules of grammar and common usage." Tex. Gov't Code § 311.011(a). "Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute." *Coit v. State*, 808 S.W.2d 473, 475 (Tex. Crim. App. 1991).

As discussed above, Delay was convicted of violating section 253.003(a) of the Election Code, which says that a person may not knowingly make a campaign contribution *that the person knows is in violation of the Election Code.* In our analysis, we looked at the

ambiguity in section 253.003(a) and determined that the statute required the person to know the contribution violated the Election Code. *Delay*, 465 S.W.3d at 250.

Turning now to the statute for which Appellant was prosecuted, Texas Election Code section 64.012(a), makes it an offense to "vote[] . . . in an election *in which the person knows the person is not eligible to vote*," where eligibility is established by section 11.001 of the Election Code (emphasis added). To construe the statute to mean that a person can be guilty even if she does *not* "know[] the person is not eligible to vote" is to disregard the words the Legislature intended. It turns the knowledge requirement into a sort of negligence scheme wherein a person can be guilty because she fails to take reasonable care to ensure that she is eligible to vote. A plain reading of the language in section 64.012(a)(1) requires *knowledge* that a defendant herself is ineligible to vote, not simple negligence. The statute does not allow a court to presume knowledge of ineligibility based solely on a provisional ballot affidavit. This reading is consistent not only with *Delay* but also with the Legislature's intent.

*i. Consistent with Delay v. State*

In *Delay*, we interpreted the phrase "knowingly make a political contribution in violation of this chapter" to mean that an actor must knowingly make a political contribution while also knowing that the contribution violates the Election Code. 465 S.W.3d at 250. Doing the same in this case yields a result in which the phrase "knows the person is not eligible to vote" means that Appellant was guilty if she knew she was ineligible to vote in addition to knowing that she had not completed her sentence.

*ii. Consistent with Legislative Intent*

The recent amendment to the Illegal Voting statute demonstrates that the court of appeals' strict liability reading of the statute—that, to be found guilty of this offense, an individual need not know that he or she is ineligible to vote or that voting while being ineligible is a crime—"would lead to absurd consequences that the Legislature could not possibly have intended." *See Boykin v. State,* 818 S.W.2d 782, 785 (Tex. Crim. App. 1991) (citing *Faulk v. State*, 608 S.W.2d 625, 630 (Tex. Crim. App. 1980)). In summer 2021, the Texas Legislature convened in a special session specifically to address voter fraud.[6] Relevant to the instant proceedings, on August 31, 2021, the Texas House of

---

[6] For some legislative background, section 64.012(c) was originally included in section 9.03 of Texas S.B. 7 (The Election Integrity Protection Act of 2021) during the Legislature's 87th general session. This omnibus bill did not pass. However, during the committee debates on S.B. 7, there arose a discussion that the purpose of this specific amendment to the voter fraud statute (colloquially known as the "Cain Amendment" since it was raised by Representative Briscoe Cain) was to ensure that those who in good faith cast a provisional ballot but turn out to be mistaken should not be prosecuted. Rep. Cain specifically argued:

> Subsection (c) was intentionally and specifically added to clarify what some courts and local prosecutors have gotten wrong. The crime of illegal voting is intended to target those individuals who intentionally try to commit fraud in our elections by voting when they know they are not eligible to vote. It is not intended to target people who make innocent mistakes about their eligibility and that are facilitated solely by being provided a provisional ballot by a judge, since federal law requires judges to give someone who isn't registered and requests to vote a ballot. To this end, this provision in the conference committee report says that filling out a provisional ballot affidavit is not enough to show that a person knew they were ineligible to vote. For the purpose of legislative intent, this does not actually change existing law, but rather it makes crystal clear that under current law, when an individual fills out a provisional ballot like tens of thousands of Texans do every year, the mere fact that they filled out and signed a provisional ballot affidavit is not enough to show that an ineligible voter knew they were ineligible to vote or that their signature on it is enough. That has always been the case. Again, no one should be prosecuted solely on the basis of filling out a provisional ballot affidavit.

H.J. of Tex., 87th Leg., R.S. S210 (2021),
https://journals.house.texas.gov/HJRNL/87R/PDF/87RDAY60SUPPLEMENT.PDF

Representatives passed House Resolution 123, directly addressing the interpretation of section 64.012(a)(1).[7] In their remarks about the resolution, representatives specifically discussed Appellant's case, suggesting that there was an error in interpreting section 64.012(a)(1) under a strict liability standard. *Id.* Specifically, the following exchange occurred between Representative Dustin Burrows, the Republican sponsor of the bill, and Representative John Turner:

> J.TURNER: You heard my reference a few moments ago to the case of Crystal Mason. And would you agree with me, Representative, that five years in prison is a serious deprivation of a person's liberty?
>
> BURROWS: I could not imagine.
>
> J. TURNER: And it seems to have been acknowledged that she did not realize that she was ineligible to vote. But her conviction has currently been upheld, although it's still on appeal, because that statute has been interpreted to say that all that was necessary was for her to know that she was on supervised release even though she didn't realize that fact made her ineligible. Have I summarized that matter correctly to your knowledge?
>
> BURROWS: My understanding is the same as yours. And as you said earlier, I would not have known that being on supervised release would have made you ineligible. That is a high bar to impute on somebody to put them away for five years.
>
> J. TURNER: I know her case is now on appeal. And of course, we have separate branches of government and it's not our role here in the legislature to tell any other branch of government what to do or how to rule in a case. But it seems to me that it is appropriate, given the fact that we adopted and then accepted the removal of the Cain amendment, to explain ourselves to some degree and express the sense of the house about the issue it dealt with. Do you agree that that's appropriate here?

---

[7] The bipartisan resolution passed with a record vote of 119 yeas, 4 nays, and 1 present, not voting. H.J. of Tex., 87th Leg., 2nd C.S. 320–22 (2021), https://journals.house.texas.gov/HJRNL/872/PDF/87C2DAY06FINAL.PDF.

> BURROWS: I think it is, and I think that we are reiterating and restating what is the current law. Obviously, the courts are about to decide what it is, but my interpretation of current law is you have to have a mens rea element. As we said, this is not a strict liability-type of issue. So I believe this resolution actually conforms with what the current law is today, and the Cain amendment was no different, which is why this body has adopted it several times.

*Id.* at 321–22 (2021).

The remarks about House Resolution 123, along with the retroactive change to section 64.012, are persuasive authority that the court of appeals' interpretation of section 64.012(a)(1)'s *mens rea* requirement was incorrect.

### 2. Proving Actual Knowledge of Ineligibility

Now that we have recognized that section 64.012 requires individuals to know they are ineligible to vote to be convicted of illegal voting, what does it substantively mean to knowingly violate the Election Code? This Court has consistently affirmed that where an offense criminalizes otherwise innocuous conduct based on particular circumstances, "the culpable mental state of 'knowingly' must apply to those surrounding circumstances." *See McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989) (analyzing Tex. Penal Code § 31.07); *see also Dennis v. State*, 647 S.W.2d 275, 280 (Tex. Crim. App. 1983) (holding that, for the possession-of-stolen-property offense, the word 'knowingly,' when used to describe the defendant's reception of property that has been stolen, requires 'actual subjective knowledge, rather than knowledge that would have indicated to a reasonably prudent man that the property was stolen' because such actual knowledge is what makes unlawful the otherwise innocent conduct of receiving property); *see also State v. Ross*, 573

S.W.3d 817, 826 (Tex. Crim. App. 2019) (analyzing Tex. Penal Code Ann. § 42.01(a)(8)) (holding that, with respect to a statute that prohibits intentionally or knowingly displaying a firearm in a manner calculated to alarm, persuading a jury that the actor's display was objectively alarming would not, by itself, be enough for a conviction); *see also Jackson v. State*, 718 S.W.2d 724, 726 (Tex. Crim. App. 1986) (holding that, for the evading arrest offense, it is essential that a defendant know the peace officer is attempting to arrest him).

Once again turning to *Delay*, we held that the State did not prove a violation of section 253.003(a) because, although the contributing corporations may have known that their contributions would be steered to specific candidates, "nothing in the record shows that anyone associated with the contributing corporations *actually realized* that to make a political contribution under these circumstances would in fact violate . . . the Texas Election Code." *Delay*, 465 S.W.3d at 252 (emphasis added).

Applying this holding in *Delay* to Appellant's alleged offense of illegal voting, the State was required to prove not only that Appellant knew she was on supervised release but also that she "*actually realized*" that "these circumstances . . . in fact" rendered her ineligible to vote. *Id*. (emphasis added).

The Election Code requires actual knowledge of one's ineligibility to vote. Because the court of appeals did not consider the evidence under the proper interpretation of the statute, we vacate that portion of the judgment of the court of appeals and remand the sufficiency ground to that court for further proceedings consistent with this opinion.

## II.

In her second ground, Mason alleges the court below erred by adopting an interpretation of the Illegal Voting statute that is preempted by the federal Helping America Vote Act, specifically by interpreting the Illegal Voting statute to criminalize the good faith submission of provisional ballots where individuals turn out to be incorrect about their eligibility to vote.

The Help America Vote Act of 2002 (HAVA) was enacted by Congress in response to the various issues with election administration across the country following the 2000 elections. The purposes of HAVA are:

> To establish a program to provide funds to States to replace punch card voting systems, to establish the Election Assistance Commission to assist in the administration of Federal elections and to otherwise provide assistance with the administration of certain Federal election laws and programs, to establish minimum election administration standards for States and units of local government with responsibility for the administration of Federal elections, and for other purposes.

Help America Vote Act of 2002, Pub. L. No. 107-252, 116 Stat. 1666, 1666.

Recognizing the cost imposed upon a state to overhaul its election procedures, HAVA provides funds to carry out compliance with the program. *See* 52 U.S.C.A. § 20901. To qualify for federal funds, a state must spend the money in compliance with Title III of the Act. 52 U.S.C.A. § 20901(b)(1)(A). Particular to the instant proceeding, Title III of the Act established new requirements for provisional voting. 52 U.S.C.A. § 21082(a). This section of HAVA requires election officials to permit certain voters, including voters whose names do not appear on the voter rolls, to cast provisional ballots; count provisional

ballots cast by voters who are found to be eligible under state law to vote; and provide voters with specified options for checking the status of their provisional ballots.[8] Therefore, under HAVA, an individual must be permitted to cast a provisional ballot if the individual believes he or she is eligible to vote, is not on the voter rolls, and affirms that he or she is registered and eligible to vote in that jurisdiction in an election for federal office. *See Sandusky Cty. Democratic Party v. Blackwell*, 387 F.3d 565, 574 (Sixth Cir. 2004); 52 U.S.C.A. § 21082(a). The right to cast a provisional ballot under HAVA is "couched in mandatory, rather than precatory, terms" and is "unambiguous." *Sandusky,* 387 F.3d at 572–73.

Appellant argued on appeal that the State's attempt to impose felony penalties on an individual who believes herself to be eligible, signs a provisional ballot, and is found ineligible to vote conflicts with HAVA. We disagree.

Under the supremacy clause of the U.S. Constitution, only state laws that interfere with or are contrary to federal law are invalid. *See Sabine Consolidated, Inc. v. State,* 806 S.W.2d 553, 555–60 (Tex. Crim. App. 1991) (quoting *Gibbons v. Ogden*, 22 U.S. 1, 82 (1824)). As discussed above, the purpose of HAVA was to improve voting systems and voter access. The prosecution of an election law violation does not conflict with any

---

[8] HAVA requires State and local election officials to set up a hotline whereby an individual can find out whether her vote was counted and if "the vote was not counted, the reason that the vote was not counted." 52 U.S.C.A. § 21082(a)(5)(B).

provisions of HAVA, primarily because HAVA is an administrative statute, not a penal statute. As the United States Court of Appeals for the Sixth Circuit noted in *Sandusky*:

> HAVA is quintessentially about being able to *cast* a provisional ballot. No one should be "turned away" from the polls, but the ultimate legality of the vote cast provisionally is generally a matter of state law. Any error by the state authorities may be sorted out later, when the provisional ballot is examined, in accordance with subsection (a)(4) of section 15482. But the voter casts a provisional ballot at the peril of not being eligible to vote under state law; if the voter is not eligible, the vote will then not be counted.

*Sandusky Cty. Democratic Party*, 387 F.3d at 576.

HAVA is unconcerned with whether an individual "believes" she is eligible to vote as long as she is given the opportunity to cast a provisional ballot. HAVA ensures a person has the right to cast a provisional ballot, but it requires the state to count a provisional ballot only if the individual provides written affirmation that she is registered in the jurisdiction and eligible to vote in the election. *See* 52 U.S.C. 21082(a),(c).

In the present case, no party disputes that Appellant cast a provisional ballot, nor does any party argue that the local election officials did not comply with HAVA. The Texas Illegal Voting statute, as discussed above, subjects individuals to criminal penalties if they vote (or attempt to vote) when they know they are not eligible to vote. This statute is not contrary to HAVA, nor does it interfere with HAVA.

The *Sandusky* court was clear that enforcement of voting laws is left to the states. 387 F.3d at 576. Further, while HAVA was enacted to improve and update voting procedures, the purpose of the Act was not to preempt state penal laws for election law

violations. Nothing in HAVA's provisional voting section prohibits a person from facing criminal penalties for violating state election laws.

**III.**

In Applicant's third ground, we face an issue of first impression: did the court of appeals misinterpret the Illegal Voting statute by holding that submitting a provisional ballot that is rejected constitutes "voting" in an election? The court below recognized that the term "vote" is not defined in the Election Code. However, the Penal Code, in prohibiting the bribery or coercion of a voter, defines the verb "vote" as "to cast a ballot in an election regulated by law." Tex. Penal Code Ann. § 36.01(4). The court below recognized that this is consistent with the *Black's Law Dictionary* definition, which characterizes the verb as casting a ballot or signaling one's choice in deciding an issue. *Vote*, *Black's Law Dictionary* (11th ed. 2019). Finding no definition that conditions the verb "vote" on whether the choice expressed is counted afterwards as part of the poll results, the court concluded that the term can be broadly defined as expressing one's choice via ballot regardless of whether the ballot is counted, and therefore "a vote" includes the casting of a provisional ballot. *Mason*, 598 S.W.3d at 775.

Appellant was charged with violating section (a)(1) of the Illegal Voting statute, which states that a person commits an offense if the person votes or attempts to vote in an election in which the person knows the person is not eligible to vote. *See* Tex. Elec. Code Ann. § 64.012(a)(1). During trial, the following evidence was developed:

- On November 8, 2016, Appellant appeared at the poll, filled out an Affidavit of Provisional Voter listing the requirements for eligibility to vote.
- Applicant submitted her provisional vote electronically.
- Election Judge Karl Dietrich testified that Appellant was then entered into the list of provisional voters in the book of registered voters, and she signed the book.
- Dietrich further testified that all provisional envelopes were placed in a special bag and submitted to the tally station where all other ballots from across the county were collected.

### i. The term "vote" is not defined.

The term "vote" is not defined in the Texas Elections Code.[9] Undefined terms in a statute are to be given their plain and ordinary meaning, and we refer to the rules of grammar and common usage to construe the terms. *Watson v. State*, 369 S.W.3d 865, 870 (Tex. Crim. App. 2012); *see also* Tex. Penal Code Ann. § 1.05(b); Tex. Gov't Code Ann. § 311.011(a), (b). Words defined in dictionaries and with meanings so well-known as to be understood by a person of ordinary intelligence are not considered vague and indefinite. Tex. Gov't Code Ann. § 311.011(a) (West 2013) (providing that statutory "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage"). We recognize Penal Code Section 36.01(4) defines the verb "vote" as meaning "to cast a ballot in an election regulated by law." Tex. Penal Code Ann. § 36.01(4). However, in keeping with the statutory-construction principle of determining the plain meaning of the word, we will not import the definition from another code.

---

[9] Relevant to this issue, HAVA includes a provision requiring states to adopt "uniform and nondiscriminatory standards that define what constitutes a vote and what will be counted as a vote." *See* 52 U.S.C.A. § 21082(a)(6).

The word "vote" is defined in dictionaries and is so well known as to be understood by a person of ordinary intelligence. In determining the plain meaning of the word, the Second Court of Appeals relied on the definitions found in *Black's Law Dictionary* and *Webster's Third New International Dictionary*:

> Black's Law Dictionary defines the verb "vote" as "[t]he act of voting" and voting as "[t]he casting of votes for the purpose of deciding an issue." *Vote, Voting*, Black's Law Dictionary. It defines "cast" as "[t]o formally deposit (a ballot) or signal one's choice (in a vote)." *Cast, id.* To cast a ballot, then, is to express one's choice, i.e., to vote. Similarly, Webster's Third New International Dictionary defines the verb "vote" as "to express one's views in response to a poll," "to express an opinion," or "to choose or endorse by vote." Webster's Third New Int'l Dictionary 2565 (2002). By comparison, Black's defines the noun "vote" as "[t]he expression of one's preference or opinion in a meeting or election by ballot, show of hands, or other type of communication." *Vote*, Black's Law Dictionary.

*Mason*, 598 S.W.3d at 774.

Appellant argues that "the [Second Court] . . . failed to consider contrary definitions, even ones from the same source" when it defined voting. Yet, Appellant cites no authority requiring a reviewing court to consider a specific number of definitions of a legally undefined term before applying a common definition. We agree with the court below that the above definitions of voting line up with the common general meaning of the verb "vote."

Appellant also attempts to distinguish between the casting of a provisional ballot vote and a "regular" ballot vote, arguing that the casting of a provisional ballot that is later rejected does not constitute the action of voting. However, Applicant fails to cite to any

authority distinguishing the two ballots. The Texas Legislature did not distinguish a "regular" vote from a provisional vote. However, HAVA did.

Section 21082 of HAVA entitled "Provisional voting and voting information requirements" uses the word "vote" to refer to casting a provisional ballot: ". . . any individual who casts a provisional ballot may access [a free system] to discover *whether the vote of that individual was counted, and, if the vote was not counted, the reason that the vote was not counted*" (emphasis added). 52 U.S.C.A. § 21082(a)(5)(B). HAVA certainly does not suggest that a "vote" requires tallying.

Also relevant is what is *not* in the Texas statute: a defense to prosecution. The illegal voting statute does not provide for a defense if election officials discover a person's ineligibility to vote before counting her ballot. Therefore, a plain reading of the Texas statute does not require the State to prove the provisional ballot was included in the final vote tally to secure a conviction for illegal voting.

Appellant argues the "attempt to vote" language of Election Code section 64.012(a)(1) would be superfluous if a vote need not be counted. Section 64.012(a)(1) creates separate criminal offenses for the conduct of voting and the conduct of attempting to vote. *See* Tex. Elec. Code Ann. § 64.012(a)(1). However, Applicant provides no authority for the argument that voting illegally is an attempted offense until such time as the cast provisional ballot is tallied and counted. The State posits that had Appellant's legal ineligibility to vote been discovered at any point before she handed her completed ballot to the poll worker, she could have been charged with attempted illegal voting. However,

we find it unnecessary to engage in the merits of this particular argument because we hold that the lower court was reasonable in finding no requirement that a person's cast provisional ballot be counted to be considered a vote.

**CONCLUSION**

The appellate court's judgment is affirmed in part and remanded in part. The court of appeals' sufficiency analysis relied on an erroneous interpretation of the statute, as Appellant stated in ground one. As a remedy, we remand ground one for additional proceedings consistent with this opinion. The court of appeals' judgment as to grounds two and three is affirmed.

Delivered: May 11, 2022

PUBLISH